751 So.2d 481 (1999)
Robert A. WHITE a/k/a Robert A. White, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1998-CA-00980-COA.
Court of Appeals of Mississippi.
August 3, 1999.
*482 P. Shawn Harris, Lake, Attorney for Appellant.
Office of the Attorney General by Pat S. Flynn, Attorney for Appellee.
EN BANC.
IRVING, J., for the Court:
¶ 1. Robert White entered a plea of guilty to the charge of "fondling" and was sentenced to a term of ten years and ordered to undergo counseling. White filed a motion for post-conviction relief in the Circuit Court of Lamar County on the basis that his attorneys incorrectly informed him on parole eligibility. The motion was denied. Aggrieved, White now appeals the denial of his motion for post-conviction relief. White presents one issue for review and resolution which is quoted verbatim from his brief:
The court erred by not granting the Appellant an evidentiary hearing on his motion Post Conviction Relief after evidence of mistaken advise [sic] of the Petitioner[']s Counsel was presented regarding false information that the petitioner would be eligible for parole at the time he was sentenced.

FACTS
¶ 2. White was indicted for sexual battery against his stepdaughter on February 28, 1996. The indictment stated that the act was ongoing over a period of years with the most recent incident occurring during the month of September 1995. White agreed to plead guilty, and in exchange for his plea, the district attorney reduced the charge from sexual battery to child molestation (fondling). On October 21, 1996, White entered a plea of guilty to "fondling." On October 30, 1997, White filed a motion for post-conviction relief in the Circuit Court of Lamar County. White alleged that he did not learn until after he was incarcerated that he had received incorrect information from his attorneys. He alleges that he was unaware that Miss.Code Ann. § 47-7-3 (Supp.1998) was amended in July of 1995 and now requires anyone who commits a sex crime to serve the entire sentence without eligibility for parole. White further alleged that his attorneys informed him that he would be eligible for parole after serving 25% of his sentence since some of the acts he pleaded guilty to occurred prior to the amending of the statute. White stated in his motion for post-conviction relief, and argues here, that had he known he would have to serve the entire term of his sentence, he would not have pled guilty.
¶ 3. The trial judge entered an order directing the attorneys who represented White at the plea hearing to submit affidavits in response to White's motion. In *483 their affidavits, the attorneys denied giving any specific information on parole eligibility, but admitted that they did not advise White of parole ineligibility. The circuit court denied White's motion for post-conviction relief without conducting an evidentiary hearing on the merits of the motion. The denial was based on the record, the petition and the affidavits submitted by both White and the attorneys.

DISCUSSION
¶ 4. A petitioner is entitled to an incourt opportunity to prove his claims if the claims are procedurally alive and show a substantial denial of a state or federal right. Washington v. State, 620 So.2d 966, 967 (Miss.1993); see Mississippi Uniform Post Conviction Collateral Relief Act, Miss.Code Ann. §§ 99-39-1 through 99-39-29 (Supp.1998). Accordingly, we must determine whether White was entitled to an evidentiary hearing.
¶ 5. The Mississippi Supreme Court has previously stated that:
[b]efore a person may plead guilty to a felony, he must be informed of his rights, the nature and consequences of the act he contemplates, and any other relevant facts and circumstances, and thereafter, voluntarily enter the plea.
Vittitoe v. State, 556 So.2d 1062, 1063 (Miss.1990).
¶ 6. The quality of advice from counsel has been considered in determining whether a plea has been entered into voluntarily. Washington, 620 So.2d at 967; Vittitoe, 556 So.2d at 1065. Mistaken advice of counsel may also vitiate a guilty plea in some cases. Myers v. State, 583 So.2d 174, 177 (Miss.1991).
¶ 7. White argues that his attorneys provided him with erroneous information on parole eligibility, thereby causing him to involuntarily enter a guilty plea. The Mississippi Supreme Court has acknowledged that parole eligibility is a consequence in which attorneys should advise their clients in order to enter a voluntary plea. See Washington, 620 So.2d at 967; Alexander v. State, 605 So.2d 1170, 1172 (Miss.1992); Coleman v. State, 483 So.2d 680, 683 (Miss.1986). The court in Washington held that the appellant was entitled to an evidentiary hearing on the basis of his contention that he did not voluntarily enter a guilty plea because of his reliance on his attorneys advice regarding the possibility of parole. Washington, 620 So.2d at 967. Washington was sentenced to a ten-year mandatory period before he would be eligible for parole. Id. at 966. He alleged that his attorney led him to believe that he would be eligible for parole in six years and three months. Id. Washington further alleged that he did not learn of the required mandatory sentence until after incarceration. Washington, 620 So.2d at 967. The State argued that the misinformation regarding parole eligibility could not have induced Washington to enter a guilty plea. Id. at 969. The State further argued that the mandatory ten years to be served was not a "consequence" of which Washington needed to be informed of in order to plead voluntarily. Id. The court held that Washington should have been given a chance to present his claim at a hearing. Id. Additionally, the court stated that the
issue is not whether Washington was sufficiently advised on his parole eligibility, but whether he was apprised of the mandatory sentence without parole consideration.
Id. (emphasis added)
¶ 8. While Washington involved a mandatory sentence issue, we see no reason to make a distinction between it and the case sub judice where the issue is sentencing without the possibility for parole. Just as the court in Washington concluded that the defendant was entitled to an evidentiary hearing, we likewise conclude that White is entitled to one. Accordingly, we reverse the trial court's dismissal of the post-conviction motion without an evidentiary hearing and remand for such a hearing *484 to determine the merits of White's allegations.
¶ 9. THE JUDGMENT OF THE LAMAR COUNTY CIRCUIT COURT OF DENIAL OF POST-CONVICTION RELIEF IS REVERSED AND REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAMAR COUNTY.
KING, P.J., AND DIAZ, J., CONCUR.
SOUTHWICK, P.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY McMILLIN, C.J.
LEE, J. DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES, PAYNE, AND THOMAS, JJ.
MOORE, J., NOT PARTICIPATING.
SOUTHWICK, P.J., CONCURRING:
¶ 10. Though I agree that we must reverse, I find that question of what had to be told White about parole requires some additional explanation.
¶ 11. As I see them, the relevant variables are not that numerous. The answers that I give to each are noted, with the explanations following.
1(a) Does anything have to be said to a defendant pleading guilty about parole? No.
1(b) If not, then does it matter if something is told him anyway and it is erroneous? Yes, the statements cannot be misleading.
2) On post conviction relief, is the affidavit of the inmate sufficient to gain a hearing if it alleges the right facts? Maybe. The inmate's affidavit, if based on personal knowledge and containing "specific and detailed" facts that if true would support the granting of relief, does require a hearing with one exception. If the court has gone beyond the petition and received affidavits and other evidence from the State, the summary judgment section (Section 99-39-19) can be applied and relief denied without a hearing in some circumstances.
¶ 12. To restate the key facts, White is asserting that his allegations fit within the precedents in which something was said about parole and it was wrong. That "something" was that he would be eligible for parole after serving 25% of his sentence. He also alleges that someone should have told him that he would have to serve the entirety of any sentence that he got, but no one did. Those are two different claims and only the first has possible merit. The evidence comes from White's affidavit and affidavits from his two former counsel. One lawyer admits that he misinformed White as to the range of sentences, saying that he could get from one to ten, when in fact fifteen was the maximum. The judge made the same error in the plea colloquy. However, White only got a ten year sentence.
¶ 13. Both lawyers denied that any statement about parole after serving 25% of the sentence was made. One lawyer stated that there was no "representation or promise... concerning his right or eligibility" for parole. The other lawyer said that White was never told he was eligible, but also says he was never told that there would be no parole. No "representation or promise" may mean parole was never mentioned, or it could mean that though mentioned, everyone pled ignorance on how it would work. The form plea petition and the counsel's form affidavit with the petition used at the guilty plea proceedings stated that no one "predicted or estimated" the amount of time he would have to serve before being eligible for release.
¶ 14. What was said in open court was limited. In the transcript of the original plea, White said that he understood the plea petition, that his two lawyers explained it, and that the sentence was from "zero to ten." There was discussion with the attorneys and the judge said the range was from "one to ten." Actually, it was from one to fifteen. White said there was no promise of a specific sentence or that it *485 would be "served in a certain way." That quote is the only reference to parole. There certainly was no statement that whatever sentence was imposed the accused must serve it all.
¶ 15. I now turn to the two issues that appear central.

1) Explanation of parole before plea.
¶ 16. The failure to be told correctly the mandatory minimum sentence renders a plea involuntary unless it can be shown the defendant would have pled anyway. Alexander v. State, 605 So.2d 1170, 1172 (Miss. 1992)(not told of right to remain silent and confront witnesses; not told of mandatory ten-year prison term), cited in Washington v. State, 620 So.2d 966, 968 (Miss.1993). In Washington, the court applied that rule to a situation in which the defendant alleges that his attorney privately informed him (not on the record in open court) that he would be eligible for parole in six years when in fact he would not be for ten years. Id. at 967. In open court taking the plea, the judge was said to have implied that Washington could without any stated limit get good time credits as "under normal sentences." What was never said is that for this crime, ten years was set as the required time to be served without parole. According to the supreme court, the plea hearing transcripts themselves gave "a definite indication" that the prosecutor and defense counsel were confused concerning the applicable statute. Id. at 968.
¶ 17. Then the supreme court makes a distinction that the case was not one in which there had been a failure to advise the accused of parole eligibility, but there was a failure to be "apprised of the mandatory sentence without parole consideration...." Id. at 970. The distinction seems to be that in those statutes that have a minimum sentence that must be served without parole, but a longer sentence option as well, the defendant has to be told "the range is from x to y, and the x has to be served without parole." Washington had to be told that he would serve ten years of whatever sentence he got, which was twenty-five years.
¶ 18. The dissent to the reversal here relies upon a recent decision that I instead find consistent with the need for reversal. The supreme court described the facts this way: "Shanks was informed of the minimum and maximum sentence he could receive for armed robbery in compliance with Rule 3.03(3)(B) of the Uniform Criminal Rules of Circuit Court Practice. The transcript of the guilty plea hearing indicates that Shanks was not informed that the first ten years of his sentence for armed robbery would have to be served without possibility of parole." Shanks v. State, 672 So.2d 1207 (Miss.1996). In Shanks, parole was discussed in the guilty plea form, and it stated that parole would be up to the authorities at the Parole Board. The plea petition in our case also mentioned as in Shanks that "no one has predicted how much time" he would have to serve and that early release was within the discretion of officials with the Department of Corrections. That kind of form language in fill-in-the-blank documents is not overly informative, but it exists. Three dissenters in Shanks found "misinformation" because the trial judge referred to parole, then said that parole was up to the parole board, but never said that even the parole board had to leave him locked up for ten years. The majority wins, though. Shanks holds that, absent any misinformation, no total explanation is needed as to parole even if mentioned during the plea hearing.
¶ 19. The complaints in Shanks and Washington do not seem that different. In Washington, there was a mention of "good time" but there was also a statement that it applied as for a "normal sentence." Reversal was required because that was misinformation. In Shanks, there was a mention of parole but no one said anything further about it. No reversal required. The need for a misleading statement is made clearer in one case handed down chronologically between Washington and *486 Shanks. It said that there were two situations for setting aside a guilty plea:
1)The sentence which the accused was informed would be his sentence if he pled guilty was erroneous and he acted in "reliance" on that information, but the mandatory minimum sentence which was imposed was harsher, or there was a misstatement by the court or the defense attorney as to the applicable minimum sentence [Washington v. State, 620 So.2d 966 (Miss.1993); Alexander v. State, 605 So.2d 1170 (Miss.1992); other citations removed]; or,
2. No representation of a minimum sentence was made, but the accused "expected" a much less severe sentence. Vittitoe v. State, 556 So.2d 1062 (Miss. 1990).
Smith v. State, 636 So.2d 1220, 1226-27 (Miss.1994). So Washington is viewed as just a "mistake" casesomething was said at the plea that was in error about the sentence. The second category defined in Smith has its own complications but they are not relevant here.
¶ 20. White's affidavit asserts that this is a mistake case too and a much clearer mistake at that. He was not just told that good time credits apply as in a normal sentence, he was told that he would be eligible after 25% of a sentence had been served. The two lawyer affidavits disputed that. The final problem then is whether White's affidavit was enough to require an evidentiary hearing.

2) Evidentiary hearing
¶ 21. A rule that gets stated in various ways is that an affidavit of the accused regarding a defect in the proceedings, standing alone, may be insufficient to require an evidentiary hearing. Robertson v. State, 669 So.2d 11, 13 (Miss.1996); Campbell v. State, 611 So.2d 209, 210 (Miss.1992). That is because, under the statute explaining what must be in a petition, there is a requirement that specific and detailed facts be presented supporting the claim, based on personal knowledge in most cases. Miss.Code Ann. § 99-39-9 (Rev.1994). The next section states that if the petition "plainly" shows no entitlement to relief, it can be denied without a hearing. Miss.Code § 99-39-11 (Supp.1998). One recent case says that when an inmate argues that a delay in sentencing violated his speedy trial rights and no affidavit was acquired from his attorney or anyone else involved with the plea, this was insufficient to require a hearing. Marshall v. State, 680 So.2d 794, 795 (Miss.1996). Judge Banks' concurring opinion states that the rule is that affidavits from others must be acquired only when events are not within the inmate's personal knowledge. Id. at 795.
¶ 22. There are a few cases that state that if there are competing affidavits creating a fact dispute, the court can still grant summary judgment under Section 99-39-19. Mowdy v. State, 638 So.2d 738, 742 (Miss.1994). What may be important is the nature of the dispute. Both in Mowdy and in a later case, Templeton v. State, 725 So.2d 764, 768 (Miss.1998), the dispute was over the defendant's role in the crime and sworn statements were made in open court by the defendant in entering his guilty plea.
This Court in Harris v. State, 578 So.2d 617, 620 (Miss.1991), held "that not all instances of conflicting affidavits will merit an evidentiary hearing. Where the petitioner's version is belied by previous sworn testimony, for example, as to render his affidavit a sham we will allow summary judgment to stand."
Mowdy, 638 So.2d at 743. The case relied upon in Mowdy found a hearing was required when there were "contradictory affidavits disputing the essential facts of Harris' claim" regarding his attorney's deciding not to appeal without getting a waiver from the client. "Such a claim, if proven, merits the relief for which he prayed." Harris, 578 So.2d at 619. The attorney denied Harris's claim and said that he had advised him of the right to *487 appeal, but Harris decided not to appeal. The court concluded by saying:
Issues of facts sufficient to require denial of a motion for summary judgment [and the grant of an evidentiary hearing] obviously are present where one party swears to one version of the matter in issue and another says the opposite.
Id. Quite simply, Harris required a hearing even though the dispute of material fact was created solely by the inmate's own affidavit. Under Harris a hearing cannot be avoided just because counsel denies the claims. However, Mowdy went further and said that credibility determinations regarding affidavits can be made on summary judgment. That is at least permitted when there is something that the inmate previously said in open court that is inconsistent with his affidavit. However, there is well-established case law that what was said during the plea colloquy regarding voluntariness is not binding, and an attack on the accuracy of what was said is permitted. Baker v. State, 358 So.2d 401, 403 (Miss.1978).
¶ 23. What all this means is that when the inmate's affidavit asserts that information was given him outside of open court that would invalidate his plea, the judge has two choices, but he cannot deny the petition under Section 99-39-11(2) as facially without merit. He can grant a hearing. Instead, the judge may ask for other affidavits and information, look at the plea transcript, and then enter summary judgment at least if the affidavit is directly impeached by what was said in sworn testimony during the plea.
¶ 24. Summary judgment has not been entered in cases in which the dispute is over what representations had been made to the defendant outside of open court, i.e., issues of voluntariness. Templeton and Mowdy are about disputing sworn explanations of the accused's role in the crime. Harris is specifically what we face, namely, what an accused's own counsel told him outside of court.
¶ 25. The trial judge here dismissed the complaint as facially invalid under Section 99-39-11(2). That was error. At most he could have granted summary judgment. He stated that White's affidavit by itself was insufficient to grant a hearing, but I find that was error and the credibility of the affidavit should have been weighed. He then said because of the absence of other evidence he need not decide whether firm representations about being eligible for parole after serving 25% of the sentence would justify relief. In fact, the issue is settled that erroneous representations about parole require reversal unless it can be shown that the representations were not a factor in the plea.
¶ 26. My result is the same as the majority, but my route is different and obviously longer. I concur.
McMILLIN, C.J., JOINS THIS SEPARATE OPINION.
LEE, J., DISSENTING:
¶ 27. The majority has concluded that White should be given a chance to present his claim at an evidentiary hearing because he, as a sex offender, relied on erroneous information from counsel regarding his parole eligibility. Because this is not supported by the record, I respectfully dissent.
¶ 28. White contends, in an unsupported affidavit, that counsel presented him with false information regarding his eligibility for parole at the time he was sentenced. A review of Myers v. State, 583 So.2d 174, 177 (Miss.1991), cited by the majority, shows that the defendant, who was sentenced to sixteen years, was told by counsel that by pleading guilty he would be sentenced to less than twelve years. The affidavit presented by Myers, unlike that presented by White, was supported by affidavits from two witnesses present during Myers's conversation with his attorney. The court found as a result that his plea was not voluntary and intelligent. Myers is distinguishable from this case since *488 there is nothing in the record to show that White was misinformed regarding the length of his sentence other than his unsupported affidavit. The affidavits submitted by both of White's attorneys in response to an order entered by the trial judge clearly deny that either attorney gave any information regarding parole eligibility to White. Though the affidavits do show that White was not advised that he would be required to serve his entire sentence without parole eligibility, Shanks v. State, 672 So.2d 1207 (Miss.1996), and Ware v. State, 379 So.2d 904 (Miss.1980), indicate that this is not the basis upon which an evidentiary hearing regarding the validity of a guilty plea has been granted.
¶ 29. In Ware v. State, 379 So.2d 904, 907 (Miss.1980) (following Smith v. United States, 324 F.2d 436, 441 (D.C.Cir.1963)), the Mississippi Supreme Court held that the trial court's failure to inform the defendant that the first ten years of his sentence for armed robbery would be served without parole did not render his guilty plea involuntary. In determining whether eligibility for parole was a consequence of a guilty plea for which a defendant must be informed, the court in Ware found that eligibility for parole is not such a "consequence" but rather "a matter of legislative grace." It likewise found that it is "equally true that noneligibility for parole" is also not a "consequence" of a guilty plea. It was therefore held that a guilty plea would not be found to be involuntary if a defendant was not informed of his ineligibility for parole. This rationale was also followed in Shanks v. State, 672 So.2d 1207, 1208 (Miss.1996).
¶ 30. Washington v. State, 620 So.2d 966, 969 (Miss.1993), relied upon by the majority, also can be distinguished from the case sub judice in that the record in Washington shows that the defendant had specifically asked a question regarding "good time" during the plea hearing. The trial judge answered with a misstatement of the law that Washington would get good time when that was clearly not the case. The court found that Washington had been misled, and he was therefore given the opportunity to present his claims at an evidentiary hearing. It is important to note that the reason Washington held that the court had the responsibility to inform Washington of his mandatory sentence prior to accepting his guilty plea is that Washington specifically asked about his ability to accumulate "good time" at the plea hearing and he was given erroneous information by the court. Coleman v. State, 483 So.2d 680, 683 (Miss.1986), also involves an erroneous representation made by the court to the defendant regarding "good time." There is no such reference in the record that "good time" was an issue discussed in White or that White was misinformed in any capacity regarding the consequences of his guilty plea.
¶ 31. Post-conviction relief is not granted for facts and issues which should have been, could have been, or were litigated at trial. Such a proceeding to set aside a guilty plea should be reviewed with the utmost gravity. It is important to remember that the remedy which is being sought is to set aside a final judgment which has been entered upon a guilty plea given in open court, following the meticulous efforts of a trial judge to ensure that such plea is knowing and voluntary. Courts should be satisfied that there is no coercion or threat inducing the plea. The orderly administration of justice does not require this Court to "lead a defendant by the hand" through the criminal justice system. Cole v. State, 666 So.2d 767, 772 (Miss.1995). A defendant need not be advised of every "but for" consequence which follows from a plea of guilty. The prosecution may well have failed to explain the details of White's eligibility for parole. This failure, however, does not and should not amount to a breach of the plea bargain agreement. The colloquy between the court and White indicates that the guilty plea was properly entered. White was properly informed of the maximum and minimum sentence. He *489 indicated that he understood the impact of entering a plea of guilty and the trial court found that he knowingly and intelligently entered his petition. This should suffice to validate the plea. I therefore respectfully dissent.
BRIDGES, PAYNE, THOMAS, JJ., JOIN THIS SEPARATE WRITTEN OPINION.