981 So.2d 1034 (2008)
Jamar WATTS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2007-CP-00291-COA.
Court of Appeals of Mississippi.
April 29, 2008.
*1036 Jamar Watts, Appellant, pro se.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before KING, C.J., IRVING and CHANDLER, JJ.
CHANDLER, J., for the Court.
¶ 1. Jamar Watts pleaded guilty to murder in the Circuit Court of Copiah County. Subsequently, Watts filed a pro se motion for post-conviction relief (PCR). The circuit court denied the PCR without an evidentiary hearing. Watts appeals, arguing: (1) that he was entitled to appointed counsel for this appeal, (2) that his guilty plea was involuntary, (3) that he received ineffective assistance of counsel, and (4) that his indictment was fatally defective. He also avers that he is entitled to an evidentiary hearing, so he may further develop his claims.
¶ 2. Finding no error, this Court affirms.

FACTS
¶ 3. Watts and other individuals were indicted by a Copiah County grand jury pursuant to Mississippi Code Annotated section 97-3-19(2)(d) for killing Cordell Johnson after being offered or receiving valuable consideration for committing the murder. At a January 9, 2006, hearing, Watts pleaded guilty to the lesser crime of murder. Before the circuit court, Watts admitted that he had conspired with Serihel Belton, Kenny Davis, Tina Harris, and Fred Shannon to murder Johnson. Johnson was believed to be a confidential informant against Davis. Watts admitted that he had shot and killed Johnson at the direction of Davis, so Johnson would not be available to testify against Davis. Davis paid Watts $1,400 to carry out the murder. After ascertaining that Watts's guilty plea was voluntary, the circuit court accepted the plea.
¶ 4. Watts timely filed a PCR seeking to withdraw the plea. Watts's primary argument was that the assistant district attorney and his defense counsel had promised him a sentence of twenty years in exchange for his guilty plea. The circuit court found that Watts's PCR did not demonstrate an involuntary plea or ineffective assistance of counsel. The circuit court denied the PCR.

STANDARD OF REVIEW
¶ 5. "When reviewing a lower court's decision to deny a petition for *1037 post[-]conviction relief this Court will not disturb the trial court's factual findings unless they are found to be clearly erroneous. However, where questions of law are raised the applicable standard of review is de novo." Brown v. State, 731 So.2d 595, 598(¶ 6) (Miss.1999) (citing Bank of Miss. v. S. Mem'l Park, Inc., 677 So.2d 186, 191 (Miss.1996)).

LAW AND ANALYSIS
I. WHETHER WATTS WAS ENTITLED TO COUNSEL FOR THIS APPEAL FROM THE DENIAL OF HIS PCR.
¶ 6. After the circuit court denied his PCR, Watts filed a notice of appeal and motions to proceed as an indigent and for appointment of appellate counsel. The circuit court allowed Watts to proceed as an indigent, but the court denied the motion for appointed appellate counsel because "a criminal defendant has neither a state nor a federal constitutional right to appointed counsel in post-conviction proceedings." Watts argues that he is entitled to appointed counsel because an appeal from the denial of a PCR is not a post-conviction proceeding. Contrary to Watts's argument, an appeal from a final judgment denying post-conviction relief is provided for by the Mississippi Uniform Post-Conviction Collateral Relief Act, and there is no right to appointed counsel. Miss.Code Ann. § 99-39-25(1) (Rev.2007); Moore v. State, 587 So.2d 1193, 1195 (Miss.1991). This issue is without merit.
II. WHETHER WATTS'S GUILTY PLEA WAS INVOLUNTARY.
¶ 7. According to constitutional standards, a plea is considered voluntarily and intelligently given if the defendant is "advised about the nature of the charge and the consequences of the entry of the plea." Brown v. State, 935 So.2d 1122, 1125(¶ 7) (Miss.Ct.App.2006) (citing Alexander v. State, 605 So.2d 1170, 1172 (Miss. 1992)). Also, the defendant must be informed that a guilty plea waives the right to a trial by a jury, the right to confront adverse witnesses, and the right to protection against self-incrimination. Alexander, 605 So.2d at 1172. Moreover, a plea is considered involuntary if it was "induced by fear, violence, deception, or other improper inducements." Fielder v. State, 749 So.2d 1248, 1250(11) (Miss.Ct.App. 1999) (quoting Smith v. State, 636 So.2d 1220, 1225 (Miss.1994)). The defendant has the burden of proving by a preponderance of the evidence that a guilty plea was involuntary. Miss.Code Ann. § 99-39-23(7) (Rev.2007); Stevenson v. State, 798 So.2d 599, 602(¶ 7) (Miss.Ct.App.2001).
¶ 8. A claim that the defendant pleaded guilty after being misadvised implicates the voluntariness of the plea because it indicates the defendant may not have fully understood the consequences of the plea. Readus v. State, 837 So.2d 209, 212(9) (Miss.Ct.App.2003). Watts contends that he pleaded guilty because of a promise from the assistant district attorney that if he cooperated with the prosecution, he would get twenty years.[1] He avers that his attorney instructed him to lie at the plea hearing when questioned by the judge. Watts attached the affidavit of his co-defendent, Belton, which stated: "I, Seriehl Belton an[d] Jamar Watts was offered an[d] promised 20 years by [the assistant district attorney] for our cooperation for the capital murder case that we were arrested for." Watts contends that, if he had known the circuit court would sentence him to life imprisonment rather *1038 than to twenty years, he would not have pleaded guilty, but would have gone to trial.
¶ 9. "[W]here an affidavit is overwhelmingly belied by unimpeachable documentary evidence in the record such as, for example, a transcript or written statements of the affiant to the contrary to the extent that the court can conclude that the affidavit is a sham no hearing is required." Wright v. State, 577 So.2d 387, 390 (Miss. 1991). Watts's contention that he pleaded guilty in reliance on a promise of a twenty-year sentence is belied by the transcript of the plea hearing and by his petition to enter a plea of guilty to murder. On the day of the plea hearing, Watts filed a sworn petition to enter a plea of guilty in which he stated that he was pleading guilty to murder and acknowledged that the punishment for murder was life imprisonment and a $10,000 fine. At the plea hearing, the circuit court properly informed Watts of the constitutional rights he waived by pleading guilty. Then, the circuit court inquired into the voluntariness of the plea by asking Watts if anyone had threatened him, promised him anything, or intimidated him to compel his guilty plea. Watts responded, "no, sir." Watts stated that it was his decision to plead guilty. Later, the following occurred:
The Court: Do you understand that this offense carries life in the penitentiary? That's the only option for the judge. Do you understand that?
[Watts]: Yes, sir.
The Court: And there's no  no one can assure you of any type of early release, good time, parole or anything else. You may have to spend every day of the rest of your life in the penitentiary, and I hope you do. Do you understand?
[Watts]: Yes, sir.
¶ 10. The plea hearing transcript also evinces sworn statements by Watts that his counsel fully advised him about the nature of the charge and the consequences of the plea and that he was satisfied with his counsel's advice. The transcript states, in pertinent part:
[The Court:] Has your lawyer explained to you and do you fully understand all the nature of the offense of murder that you're pleading guilty to, and has he explained all the law relating to that offense and the procedures that would be followed here in court?
[Watts:] Yes, sir.
[The Court:] And you understood all of those?
[Watts:] Yes, sir.
¶ 11. Watts's PCR and Belton's affidavit both aver that Watts's confession was induced by a promise of a twenty-year sentence. Whatever Watts may have thought at the time of his confession, the plea petition and plea hearing transcript belie the notion that Watts thought he was eligible for a twenty-year sentence at the time he decided to plead guilty. The record unambiguously reflects that, at the time Watts pleaded guilty, he was fully informed that the only available sentence for the crime of murder was life imprisonment. The record further reflects that this was a favorable arrangement for Watts, who was indicted for capital murder and avoided eligibility for the death penalty by pleading guilty to murder. The circuit court's finding that Watts's guilty plea was voluntary was not clearly erroneous. This issue is without merit.
III. WHETHER WATTS RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.
¶ 12. This Court applies the two-part test from Strickland v. Washington, 466 *1039 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to review claims of ineffective assistance of counsel. The claimant bears the burden of proof to show that: (1) counsel's performance was deficient and (2) the deficiency prejudiced his defense. See Brown, 935 So.2d at 1125(¶ 10). Allegations of ineffective assistance of counsel must be made with specificity and detail. Wiley v. State, 750 So.2d 1193, 1199(¶ 12) (Miss.1999). This Court assesses the totality of the circumstances in determining whether counsel's assistance was effective. Id. at (¶ 11). There is a strong but rebuttable presumption that counsel's performance was within the wide range of reasonable professional assistance. Rankin v. State, 636 So.2d 652, 656 (Miss.1994). To show prejudice, the claimant must demonstrate that, but for his attorney's errors, there is a reasonable probability that a different result would have occurred. Id.
¶ 13. Watts argues that he received ineffective assistance of counsel because his attorney: (1) failed to investigate his alibi defense, (2) failed to challenge the admissibility of his confession, (3) failed to challenge his defective indictment, (4) erroneously advised him that he would be sentenced to twenty years if he pleaded guilty, and (5) instructed him to lie to the court at the plea hearing. He avers that, but for this deficient performance by counsel, he would not have entered a guilty plea and would have gone to trial.
¶ 14. Counsel's decision not to investigate must be assessed for reasonableness under the circumstances, and this Court applies "a heavy measure of deference to counsel's judgments." Foster v. State, 687 So.2d 1124, 1132 (Miss.1996). Regarding the allegation of counsel's failures to investigate an alibi defense, there is nothing to indicate counsel's performance was outside the range of reasonable, professional assistance. At the time counsel was appointed for Watts, he had already confessed to the crime, and the attorney reasonably directed his attention to Watts's options given the fact that he had confessed.
¶ 15. Watts also asserts that his attorney performed deficiently because he did not move to suppress his confession after being told by Watts that the confession was coerced by the assistant district attorney's promise of a twenty-year sentence. "`[C]ounsel's failure to file certain motions, call certain witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy' and do not give rise to an ineffective assistance of counsel claim." Pruitt v. State, 807 So.2d 1236, 1240(¶ 8) (Miss.2002) (quoting Cole v. State, 666 So.2d 767, 777 (Miss.1995)). Watts's allegations do not overcome the presumption that his attorney, after weighing all of the options available to Watts, reasonably determined that the best option for Watts was to accept the State's offer to plead guilty to murder.
¶ 16. Watts next argues that his attorney was ineffective because he failed to challenge a jurisdictional defect in his indictment. Watts contends his indictment was defective because it was rendered in the September 2004 term, but not filed until June 9, 2005. Rule 7.06 of the Uniform Rules of Circuit and County Court Practice states that an indictment shall include:
1. The name of the accused;
2. The date on which the indictment was filed in court;
3. A statement that the prosecution is brought in the name and by the authority of the State of Mississippi;
4. The county and judicial district in which the indictment is brought;
5. The date and, if applicable, the time at which the offense was alleged to have been committed. Failure to state the *1040 correct date shall not render the indictment insufficient;
6. The signature of the foreman of the grand jury issuing it; and
7. The words "against the peace and dignity of the state."
Watts's indictment met these requirements. Under Mississippi Code Annotated section 99-7-9 (Rev.2007), "the endorsement by the foreman, together with the marking, dating, and signing by the clerks shall be the legal evidence of the finding and presenting to the court of the indictment." Watts's indictment was endorsed by the grand jury foreman; it was also marked "filed," dated, and signed by the clerk of the circuit court. Thus, his indictment was free from jurisdictional defects, and his counsel was not ineffective for failing to challenge the indictment.
¶ 17. Watts's arguments that his attorney was ineffective for misrepresenting the length of his sentence for murder and for instructing him to lie to the court are likewise without merit. Watts contends that these mistakes by counsel prejudiced him because they resulted in his entry of an involuntary guilty plea. We have already concluded from Watts's sworn statements at the plea hearing and in his sworn petition to enter a plea of guilty that Watts was fully aware of the mandatory life sentence for murder at the time he decided to plead guilty. Therefore, Watts has not shown that he would not have pleaded guilty "but for" his attorney's erroneous advice. This issue is without merit.
IV. WHETHER THE INDICTMENT AGAINST WATTS WAS DEFECTIVE.
¶ 18. Watts argues that his indictment was defective because it was untimely filed and that the court lacked jurisdiction over him. The defendant's entry of a valid guilty plea waives all non-jurisdictional defects in the indictment. Carroll v. State, 963 So.2d 44, 46(¶ 6) (Miss.Ct.App. 2007). We have already found that Watts's indictment was jurisdictionally sound in our discussion of Issue III. Therefore, this issue is without merit.
V. WHETHER THE CIRCUIT COURT SHOULD HAVE GRANTED AN EVIDENTIARY HEARING.
¶ 19. Watts contends that the circuit court erred by denying his PCR by relying solely on his motion and other documents before the court. Watts argues that the circuit court should have granted an evidentiary hearing to determine the merits of his claims. The circuit court may order an evidentiary hearing upon a determination, after a review of the record, that one is required. Miss.Code Ann. § 99-39-19(1) (Rev.2007). No hearing is required when, based on the record of the guilty plea hearing, it is clear that the petitioner is entitled to no relief. Id.; Barnes v. State, 937 So.2d 1006, 1009(¶ 8) (Miss.Ct.App.2006). Nothing about Watts's PCR indicated a need for further exploration of his issues in the context of an evidentiary hearing. It is clear from the record that Watts is entitled to no relief. This issue is without merit.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF COPIAH COUNTY DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COPIAH COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] We note that twenty years is the maximum sentence for conspiracy to commit capital murder. Miss.Code Ann. § 97-1-1(3) (Supp. 2007).