# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CP-01794-COA

**KENDALL MAGEE A/K/A KENDALL K. MAGEE**  **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/31/2019 |
| TRIAL JUDGE: | HON. DAVID H. STRONG JR. |
| COURT FROM WHICH APPEALED: | WALTHALL COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | KENDALL MAGEE (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 09/21/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., GREENLEE AND LAWRENCE, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.   Kendall Magee appeals the Walthall County Circuit Court's denial of post-conviction collateral relief (PCR).  Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.   In August 2014, a shooting occurred at an apartment complex in Tylertown, Mississippi, in which Kendall Magee fatally shot Tyriunce Lewis.  Subsequently, Magee was indicted for first-degree murder (Count I) and possession of a firearm by a felon (Count II). The indictment was later amended from first-degree murder to second-degree murder.

¶3.   In September 2015, Magee pled guilty to both counts.  During the plea hearing, Magee

informed the court that he wanted another attorney. The court responded, "You can have any lawyer you want, . . . but your case needs to be tried pronto, Mr. Magee." When the court clarified that Magee's trial would be set for that Thursday, Magee stated that he wished to plead guilty. The court advised Magee of the minimum and maximum sentences for each count, and Magee indicated that he understood that he could be sentenced up to the maximum sentence. Magee further stated that nobody had threatened him or promised him anything to plead guilty and that he was pleading guilty for no other reason than the fact that he was guilty. Then Magee inquired again, "Your Honor, you said that court would be this Thursday?" And the judge responded, "That's when we would seek to schedule your trial, Mr. Magee." Ultimately, Magee pled guilty to both counts.

¶4. For his conviction of Count I, Magee was sentenced to thirty-five years in the custody of the Mississippi Department of Corrections (MDOC), with ten years suspended and five years of supervision. For his conviction of Count II, Magee was sentenced to serve ten years in the MDOC's custody, with ten years suspended and five years of supervision.[1] The court ordered Magee's sentence in Count II to run consecutively to his sentence in Count I.[2] The court also ordered Magee to pay a $2,000 fine, court costs, and an amount to be determined for the victim's burial expenses.

---

[1] The sentencing transcript indicates that Magee's sentence totaled forty-five years in custody, with twenty years suspended, and five years of post-release supervision.

[2] Both sentences were ordered to run concurrently with Magee's sentence in cause number "2011-22-S Revocation."

2

¶5.    On July 23, 2018, Magee filed a PCR motion.[3] In his motion, Magee claimed that his plea was involuntary because his attorney failed to investigate the case, his attorney misinformed him of the possible sentence, and the judge coerced him into pleading guilty. He also suggested that he had received ineffective assistance of counsel. Magee attached Exhibits A through M to his motion, which included affidavits from Magee, his mother, and his two aunts.

¶6.    In his affidavit, Magee stated that his attorney "seemed confused and unknowledgeable" about his defense. Specifically, Magee asserted that the first gunshot was fired in self-defense, and then the gun jammed, resulting in a second, unintentional shot. Magee stated that had his attorney properly prepared a defense based on those alleged facts and hired a gun expert to testify, he would have insisted on going to trial instead of pleading guilty. Magee's affidavit also stated that "[n]o mention was made of early release programs I may or may not be eligible for but I relied on the fact that [counsel] affirmatively told me I would only serve six or seven years." Finally, Magee's affidavit stated that the judge coerced him into pleading guilty by denying a continuance to seek new counsel.

¶7.    Magee's mother stated in her affidavit that she was present during a meeting between Magee and his attorney, and the attorney stated that Magee would only serve six or seven years in prison if he pled guilty. Magee's mother also stated in her affidavit that the judge pressured Magee at the plea hearing and that Magee was forced to plead guilty. Similarly, Magee's aunts stated in their affidavits that Magee's attorney stated that Magee would only

---

[3] According to Magee, he filed a PCR motion in August 2017 but later filed a motion to dismiss because the motion was "inartfully . . . drafted."

serve six or seven years in prison and that the attorney was confused about Magee's defense.

¶8.    Subsequently, the circuit court ordered an evidentiary hearing.[4] Prior to the hearing, Magee filed a motion for appointment of counsel. In the motion, Magee explained that he had been using the services of an inmate writ writer and was unable to represent himself at the hearing due to the complexity of the case. Magee also filed a "Motion for Continuance of Evidentiary Hearing Pending Appointment of Counsel and Preparation for Hearing" and a "Motion for Order Directing Walthall County Jail to Permit Special Visit with Evidentiary Hearing Witnesses."

¶9.    At the hearing, the court denied Magee's motion for appointment of counsel, and Magee represented himself pro se. Ultimately, the court denied post-conviction relief. In its order, the court stated that there was nothing in the record to substantiate Magee's claim that his attorney did not properly investigate the case. The court noted that the affidavits attached to Magee's PCR motion appeared to have been written by Magee and signed by his family members, and none of the witnesses provided corroborating testimony at the evidentiary hearing. The court further held that Magee was properly advised by the court of the minimum and maximum sentences. Finally, the court held that Magee had not been coerced into pleading guilty.

¶10.    Now, Magee appeals. Magee claims that the court erred by (1) not allowing him to present testimony of his former attorney or three witnesses at the evidentiary hearing, (2)

_____

[4] At the hearing, the court noted, "Frankly, Mr. Magee, whether you were entitled to an evidentiary [hearing] was a close call, and out of an abundance of caution I gave you one."

4

failing to address his claim that he pled guilty in reliance on incorrect advice regarding his sentence, and (3) denying his motion to continue the evidentiary hearing.

## STANDARD OF REVIEW

¶11.    "When reviewing a [circuit] court's denial or dismissal of a PCR motion, we will only disturb the [circuit] court's decision if it is clearly erroneous; however, we review the [circuit] court's legal conclusions under a de novo standard of review." *Williams v. State*, 228 So. 3d 844, 846 (¶5) (Miss. Ct. App. 2017) (quoting *Thinnes v. State*, 196 So. 3d 204, 207-08 (¶10) (Miss. Ct. App. 2016)).  Additionally, "it is within the circuit court's discretion to grant or deny a motion for a continuance." *Harvell v. State*, 281 So. 3d 1024, 1031 (¶21) (Miss. Ct. App. 2019) (quoting *Jackson v. State*, 231 So. 3d 257, 260 (¶15) (Miss. Ct. App. 2017)).

## DISCUSSION

I.    **Whether the court erred by not allowing Magee to present the testimony of his former attorney or three witnesses at the evidentiary hearing.**

¶12.    Magee claims the court had a duty to issue an order directing his former attorney to submit an affidavit in response to his PCR motion and appear at the evidentiary hearing to provide testimony, if necessary.

¶13.    In support of his claim, Magee cites to *White v. State*, 751 So. 2d 481 (Miss. Ct. App. 1999).  In *White*, the defendant pled guilty to the charge of "fondling." *Id*. at 482 (¶1). Subsequently, White filed a PCR motion alleging that his attorneys incorrectly informed him about parole eligibility. *Id*.  This Court noted that the circuit court "entered an order

5

directing the attorneys who represented White at the plea hearing to submit affidavits in response to White's [PCR] motion." *Id*. at (¶3). "In their affidavits, the attorneys denied giving any specific information on parole eligibility, but admitted that they did not advise White of parole ineligibility." *Id*. at 482-83 (¶3). The circuit court denied White's motion without conducting an evidentiary hearing, and this Court reversed and remanded for a hearing to determine the merits of White's allegations. *Id*. at 483-84 (¶8). Although the circuit court in *White* ordered a response from White's attorneys, this Court's decision in *White* does not *require* circuit courts to order attorneys to respond to PCR motions or appear at evidentiary hearings.

¶14. Magee also claims that the court erred by not allowing him to present witness testimony at the evidentiary hearing. At the evidentiary hearing, Magee took issue with what his lawyer allegedly told him about his sentence. Magee stated, "I have the witness statements and everything. I have like three witnesses that heard what he said and like the time frame that he gave me, and wasn't . . . none of that true." Although Magee stated that he had three witnesses, there is no evidence that the witnesses were present at the evidentiary hearing. In fact, at the hearing, Magee requested "[a] motion . . . to permit special visit with evidentiary witnesses."

¶15. The dissent suggests that it was the court's responsibility to ask whether Magee had any witnesses he wished to call in support of his motion and that it was the court that effectively prevented Magee from putting on proof that his guilty pleas were erroneous. However, Mississippi Code Annotated section 99-39-23(3) (Rev. 2020) states that when an

evidentiary hearing is required, "[t]he parties shall be entitled to subpoena witnesses and compel their attendance, including, but not being limited to, subpoenas duces tecum." Miss. Code Ann. § 99-39-23(3). There is no evidence that Magee "attempted to exercise this right." *Nance v. State*, 766 So. 2d 111, 114 (¶10) (Miss. Ct. App. 2000). Accordingly, this issue is without merit.

> ## II. Whether the court erred by failing to address Magee's claim that he pled guilty in reliance on incorrect advice regarding his sentence.

¶16. Magee contends that the court erred by not addressing his claim that he pled guilty based on his attorney's incorrect advice about his sentence. He argues that the court erred by ruling that the advice of his former attorney was protected under the attorney/client privilege.

¶17. "A guilty plea is valid if it is entered into voluntarily, knowingly, and intelligently." *Yates v. State*, 226 So. 3d 614, 619 (¶16) (Miss. Ct. App. 2017) (internal quotation marks omitted) (quoting *Williams v. State*, 31 So. 3d 69, 74 (¶13) (Miss. Ct. App. 2010)). "To determine whether the plea is voluntarily and intelligently given, 'the [circuit] court must advise the defendant of his rights, the nature of the charge against him, as well as the consequences of the plea.'" *Id*. (quoting *Williams*, 31 So. 3d at 74 (¶13)). "The burden of proving a guilty plea is invalid rests with the defendant, and must be proven by a preponderance of the evidence." *Id*.

¶18. In his affidavit, Magee stated that "[n]o mention was made of early release programs I may or may not be eligible for but I relied on the fact that [counsel] affirmatively told me

7

I would only serve six or seven years." Likewise, in his PCR motion, Magee stated that "[n]o mention was made of early release programs that [he] may or may not be eligible for during the hearing." However, he stated that when he "arrived [at MDOC] . . . [he] found out that he was not eligible for any program that would effectuate early release for him, and that his actual time to serve in prison would be 25 years." According to Magee, he had relied on counsel's "promise that he would only serve six to seven years incarceration and this advice was not directly contradicted by [the judge's] colloquy."

¶19. Likewise, the dissent asserts that "[t]here is nothing in the plea colloquy that shows the circuit court addressed or corrected this misinformation [that] Magee allegedly received from his attorney prior to entering his guilty pleas." However, the plea-hearing transcript shows that Magee was informed of the minimum and maximum sentences for each count. During the hearing, the following colloquy occurred:

COURT: Do you understand that by pleading guilty, you give up or waive all of those rights that we've gone over and it places you in a position where you can be sentenced by the [c]ourt up to the maximum penalties provided by law?

The sentencing range for second degree murder is 20 to 40 years. And the sentencing range for possession of a firearm by a convicted felon - - I'm assuming a $10,000 fine, general fine?

COUNSEL: Yes, sir.

COURT: And the sentencing range for possession of a firearm by a convicted felon, I believe, is one to ten years.

COUNSEL: Yes, sir.

COURT: One to ten years in the state penitentiary. And the fine, is that 10 or - - a $5,000 maximum fine. For a total sentencing range

8

of anywhere from one to 50 years and zero to $15,000 in fines.

Do you understand that?

MAGEE:     Yes, sir.

This Court has held that "statements made in open court under oath 'carry a strong presumption of verity.'" *Id*. (quoting *Thomas v. State*, 159 So. 3d 1212, 1216 (¶12) (Miss. Ct. App. 2015)). Additionally, Magee signed a document titled "Know Your Rights Before Pleading." It appears that Magee handwrote the maximum sentences for each count and indicated that he understood that by pleading guilty he could be sentenced by the court up to the maximum penalty provided by law.

¶20.     Although Magee submitted affidavits stating he was advised that he would only serve six or seven years, the affidavits were contradicted by the record. "A [circuit] court may disregard the movant's assertions where they are substantially contradicted by the court record that culminated in the entry of the guilty plea." *Id*. at (¶18) (quoting *Larry v. State*, 129 So. 3d 263, 265-66 (¶10) (Miss. Ct. App. 2013)). Any misconceptions Magee had prior to the plea hearing were corrected by the judge at the plea hearing. "A guilty plea is voluntary despite erroneous advice by counsel if the defendant's misconception is corrected by the court during the plea colloquy." *Id*. (quoting *Larry*, 129 So. 3d at 265 (¶9)).

¶21.     The dissent compares this case to *Ulmer v. State*, 292 So. 3d 611 (Miss. Ct. App. 2020). On appeal, Ulmer asserted that "his plea was not knowing, intelligent, and voluntary because he was affirmatively misinformed by counsel that he would receive trusty-earned time if he pled guilty to the reduced charge of second-degree murder, and he pled guilty in

9

reliance on that erroneous information." *Id*. at 613-14 (¶8). This Court found that the judge did not say anything during the plea colloquy that could contradict or make Ulmer question the advice he had received from his attorney. *Id*. at 615 (¶13). Further, this Court found that "the plea petition did not contradict in any shape or form Ulmer's erroneous expectation about trusty-earned time, parole, or early release," and therefore the circuit court erred by concluding that the plea petition belied the testimony presented in Ulmer's sworn affidavits or the testimony produced at the evidentiary hearing." *Id*. at 615-16 (¶14).

¶22. However, as the dissent acknowledges, "Magee does not assert that his attorney said anything about any specific program that he may or may not be eligible for as a result of his guilty pleas." Instead, Magee alleges his attorney told him that he would serve six or seven years. As discussed, this alleged misinformation was corrected at the guilty-plea hearing.

¶23. While the court may have erred by stating that what Magee was told by his attorney was none of the court's business, any failure to address this claim at the evidentiary hearing was not reversible error. In the court's written order, the judge stated, "The record reflects that on September 1, 2015, Magee was questioned thoroughly by the [c]ourt as to whether he understood his rights and all implications of the plea and sentencing proceedings, including the minimum and maximum sentences for each count for which he was charged, to which he answered under oath in the affirmative." The judge further stated that he had advised Magee that he "could sentence him to the maximum penalty for each offense." For these reasons, this issue is without merit.

    **III.    Whether the court erred by denying Magee's motion to continue the evidentiary hearing.**

10

¶24. Prior to the evidentiary hearing, Magee filed a "Motion for Continuance of Evidentiary Hearing Pending Appointment of Counsel and Preparation for Hearing." Magee asserted that a continuance was necessary to allow the court time to appoint counsel who would help him prepare for the evidentiary hearing. On appeal, Magee claims that the circuit court abused its discretion by denying his motion.

¶25. This Court has held that a "[circuit] court may appoint counsel to represent an indigent defendant in a PCR evidentiary hearing." *Higginbotham v. State*, 114 So. 3d 9, 17 (¶26) (Miss. Ct. App. 2012) (quoting *Nance*, 766 So. 2d at 114 (¶12)); *see also* Miss. Code Ann. § 99-39-23(1). However, "a criminal defendant has neither a state nor federal constitutional right to appointed counsel in post-conviction proceedings." *Higginbotham*, 114 So. 3d at 17 (¶26) (quoting *Watts v. State*, 981 So. 2d 1034, 1037 (¶6) (Miss. Ct. App. 2008)). "[T]he [circuit] court has discretion to appoint counsel in PCR proceedings where the circuit court determines that the petitioner qualifies and displays a need for counsel." *Id*.

¶26. A review of the record fails to reflect a need for appointment of counsel. The court noted that "whether [Magee was] entitled to an evidentiary [hearing] was a close call, and out of an abundance of caution [he was granted] one." We find no abuse of discretion by the circuit court in denying Magee's motion for a continuance pending appointment of counsel for the evidentiary hearing on his PCR motion. Therefore, this issue is without merit.

## CONCLUSION

¶27. The circuit court's decision to deny post-conviction relief was not clearly erroneous; therefore, we affirm the circuit court's judgment.

11

¶28. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., AND SMITH, J., CONCUR. LAWRENCE, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. EMFINGER, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY WILSON, P.J., WESTBROOKS, McDONALD AND McCARTY, JJ.**

**EMFINGER, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶29. On September 1, 2015, Kendall Magee pled guilty to one count of second-degree murder and one count of possession of a firearm by a felon. The "Plea of Guilty and Sentence Order" was filed on September 3, 2015, sentencing Magee to a term of thirty-five years in the custody of the Mississippi Department of Corrections (MDOC), with ten years suspended, for second-degree murder, and ten years in MDOC's custody, with ten years suspended, for possession of a firearm by a felon. The second sentence was ordered to run consecutively to the first sentence, and the court imposed a period of post-release supervision. On July 23, 2018, Magee filed a "Motion for Post-Conviction Relief" (PCR) seeking to have his pleas "vacated." His PCR petition alleges that his pleas of guilty were involuntary because he received ineffective assistance of counsel and because the judge coerced him into pleading guilty. Over a year later, the circuit court set the matter for hearing on September 10, 2019. At that hearing, the court denied Magee's motion for recusal, his motion for a continuance, his motion for the appointment of an attorney, and his PCR petition.

¶30. On appeal, Magee contends that the circuit court erred by effectively preventing him from putting on testimony as to what he was told by his trial attorney, prior to his entry of his

12

pleas of guilty, concerning how much time he would serve if sentenced to the recommendation by the State and that the circuit court erred by denying his motion for a continuance. The lead opinion affirms the circuit court's decisions. I concur that the circuit court did not abuse its discretion by denying the motion for a continuance. I also concur that the circuit court did not err by failing to require Magee's trial counsel to respond to the petition and appear at the hearing. Magee could have subpoenaed the attorney if Magee wanted him to appear. However, because I find that the circuit court's statements and rulings during the hearing effectively prevented Magee, appearing pro se, from putting on proof that his guilty pleas were involuntary as a result of erroneous advice he received from counsel, I must respectfully dissent.

¶31. Magee alleges that his counsel advised him that if he pled guilty, with the State's recommendation as to his sentence, he would only spend six to seven years in custody. He attached to his petition his own affidavit wherein he states that counsel made this representation to him prior to his guilty pleas and that if he had known that was not true, he would have gone to trial. He further alleges in his affidavit that once he reached MDOC's custody, he learned that he was "not eligible for any early release programs, that in effect my twenty-five year sentence was mandatory and I would serve twenty-five years in prison." He attached the affidavits of three others to his petition, however, only Shirley Smith, Magee's mother, states in her affidavit that she heard counsel make that representation to Magee.[5]

---

[5] Mollie Dillon's affidavit does not state that she heard the attorney make the representation; however, Magee alleges that she was in a meeting with the attorney and heard the representation.

13

¶32. Instead of summarily dismissing the petition pursuant to Mississippi Code Annotated section 99-39-11(2) (Rev. 2015), the circuit court set the matter for an evidentiary hearing. In *Manuel v. State*, 304 So. 3d 713, 717 (¶¶9-10) (Miss. Ct. App. 2020), this Court said:

> An evidentiary hearing is not required if the movant's claims are supported by only his own affidavit and are "contradicted by unimpeachable documents in the record." *Sylvester v. State*, 113 So. 3d 618, 621 (¶9) (Miss. Ct. App. 2013) (citing *Gable v. State*, 748 So. 2d 703, 706 (¶12) (Miss. 1999)). **However, a hearing is necessary if the movant presents "sufficient evidence such that his allegations are not overwhelmingly belied" by the plea hearing transcript and related documents**. *Id*. at 622 (¶11).
>
> The substantive law governing Manuel's claim is also well settled. Our Supreme Court has held that a circuit judge is not required to explain the defendant's eligibility or ineligibility for parole as a prerequisite to a voluntary guilty plea. *Ware v. State*, 379 So. 2d 904, 907 (Miss. 1980); *accord Mosley v. State*, 150 So. 3d 127, 136-37 (¶29) (Miss. Ct. App. 2014). "On the other hand, **'a plea is involuntary if a defendant is affirmatively misinformed regarding the possibility of parole and pleads guilty in reliance on the misinformation**.'" *Mosley*, 150 So. 3d at 137 (¶29) (quoting *Thomas v. State*, 881 So. 2d 912, 916 (¶10) (Miss. Ct. App. 2004)).

(Emphasis added). In the present case, the circuit court obviously found that Magee had presented sufficient evidence to make an evidentiary hearing necessary. Prior to setting the hearing, however, the circuit court did not order the State to file a response as required by Mississippi Code Annotated section 99-39-11(3) and section 99-39-19 (Rev. 2015). In fact, the State did not file a response and did not file any counter-affidavits prior to the hearing. Further, the State did not move for summary judgment.[6]

¶33. At the hearing, the court first denied the motion to appoint counsel and the motion to recuse. Then Magee was sworn in and the following exchange occurred:

---

[6] At the hearing, the State did not question Magee, did not offer any proof, and did not make any argument in opposition to the petition.

14

THE COURT:        . . . I mean, what are you here about? That's the question, is what -

MR. MAGEE:        I'm here to overturn my case, my case overturned.

THE COURT:        Right. And your primary beef or primary complaint is that–a comment I made while you were pleading guilty; is that correct?

MR. MAGEE:        And also what the lawyer told me.

THE COURT:        Okay. Well, who was your lawyer?

MR. MAGEE:        Mr. Robert Laher.

THE COURT:        Who you hired, correct?

MR. MAGEE:        Yes.

THE COURT:        Right. I don't know what he told you. That's none of my business. Candidly, it's - it's attorney/client privilege, and I don't - I have no idea what he did or didn't tell you.

MR. MAGEE:        Okay. But I have three witness statements and everything. I have like three witnesses that heard what he said and like the time frame that he gave me, and wasn't - wasn't none of that true.

After further exchanges concerning other matters, the trial court made the following statement:

THE COURT:        Well, again, what went on between you and your lawyer is between you and your lawyer, but you've - you've shown me or presented to me absolutely nothing that would lead me to overturn your conviction, nothing.

The court clearly erred in finding that what Magee's attorney told him was none of the court's business. It is the essence of Magee's claim that his guilty pleas were involuntary. From the transcript, it is clear that Magee, appearing pro se, was never asked whether he had

15

any witnesses he wished to call in support of his petition. Further, because of the court's statement, it was reasonable for Magee to believe that the court did not want to hear from any witnesses about what the attorney said to Magee.

¶34.　This case is similar to *Ulmer v. State*, 292 So. 3d 611 (Miss. Ct. App. 2020), where the defendant filed a PCR petition claiming he had been misinformed by his attorney that although he was pleading to second-degree murder, he would be eligible for "trusty-earned time," which provided thirty-days' credit for every thirty days he served. *Id*. at 612 (¶3). This misinformation gave that defendant the impression he would only serve half of whatever sentence he received for second-degree murder. *Id*. After he was informed by MDOC that he was not eligible for "trusty-earned time," he filed the PCR petition. *Id*. His attorney testified at the hearing:

> Rickman stated that she and "other public defenders throughout the state believed that a sentence for second-degree murder would be eligible for trusty-earned time." Mississippi Code Annotated section 47-5-138.1 (Supp. 2014) permitted trusty-earned time, allowing certain offenders to receive credits of thirty days off their sentences for every thirty days served. In her affidavit and sworn testimony, Rickman testified that she told Ulmer he would be eligible for trusty-earned time. Notably, Rickman stated, "Based on that advice, I believed Lonnie Ulmer pled guilty to second-degree murder. I do not believe that he would have pled guilty if he had been advised that the twenty-year sentence would have to be served day for day."

*Id*. at 613 (¶4). After the full evidentiary hearing in *Ulmer*, the circuit court denied the relief sought. On appeal, this Court reversed that decision, vacated the defendant's guilty plea, and remanded the case for further proceedings.

¶35.　In the present case, Magee does not assert that his attorney said anything about any specific program that he may or may not be eligible for as a result of his guilty pleas. Instead,

Magee alleges that his attorney advised him that he would serve no more than six to seven years of the twenty-five-year sentence. Magee also asserts that he would not have pled guilty if he had known that he would be required to serve twenty-five years. There is nothing in the plea colloquy that shows the circuit court addressed or corrected this misinformation Magee allegedly received from his attorney prior to entering his guilty pleas.

¶36.    Magee made a sufficient showing in his petition that as a result of misinformation received from his attorney, his guilty pleas were involuntary, making an evidentiary hearing necessary. Because I would find that the circuit court, by its statements from the bench,[7] effectively prevented Magee from putting on proof of this claim, I would reverse the circuit court's decision on this issue and remand the case for a full hearing as to whether Magee was misinformed as to the consequences of his pleas of guilty and whether those pleas were given in reliance on the alleged misinformation.

**WILSON, P.J., WESTBROOKS, McDONALD AND McCARTY, JJ., JOIN THIS OPINION.**

---

[7] The Court is mindful that such statements made by the circuit court could have been easily considered a ruling from the bench by a pro se litigant.