MYERS, P.J.,
 

 for the Court:
 

 ¶ 1. Jason Edward Williams appeals the DeSoto County Circuit Court’s denial of his petition for post-conviction relief (PCR). Finding no error, we affirm the trial court’s decision.
 

 FACTS
 

 ¶ 2. On June 24, 2004, a DeSoto County grand jury indicted Williams on one count of culpable-negligence manslaughter under Mississippi Code Annotated section 97-3-47 (Rev.2006) for causing the death of Ashley Nicole Flowers, and one count of aggravated assault under section 97-3-7(2)(a) (Supp.2009) for causing serious bodily injury to Brian Flowers. On May 11, 2005, Williams petitioned the trial court to allow him to enter an open plea of guilty for both offenses, with a request that his sentences run concurrently.
 

 ¶ 3. On May 17, 2005, Williams appeared in the trial court with counsel for a plea hearing. The trial judge informed Williams of the maximum and minimum punishment for each offense. The judge asked Williams if he had read and understood the plea petitions that he signed under oath. Williams answered affirmatively, stating that he had completed two years of college and could read very well. Williams was then asked if he had sufficient time with his legal counsel to discuss his decision to plead guilty. Williams responded affirmatively. The judge followed up with a series of questions for the purpose of determining Williams’s competency. Satisfied with Williams’s responses, the judge instructed the prosecutor to tell Williams what the State had charged him with and what would be shown in a trial before a jury in DeSoto County. The following colloquy took place:
 

 THE PROSECUTOR: The State would show beyond a reasonable doubt with credible and admissible evidence, in Count 1[,] the Defendant did on or about the 24th day of October of 2003 kill Ashley Nicole Flowers by culpable negligence; and in Count 2, on that same day, did recklessly cause serious bodily injury to Brian Flowers under circumstances manifesting extreme indifference to the value of human life by operating his vehicle, in which Brian Flowers was a passenger, at night without the use of headlights, and said conduct resulted in the vehicle leaving the roadway, crashing and causing Brian Flowers to suffer a fractured vertebra.
 

 The facts would show, Your Honor, that Mr. Williams at the time was 21 years old. He had five minor passengers in his vehicle, the oldest being 17; the youngest being 13, and that was Ashley Nicole Flowers. Around eight o’clock that night is when this incident occurred, but just prior to that, Mr. Williams had purchased a large amount of alcohol with funds provided to him by some of the minors in the vehicle. Some of those minors were drinking, along with Mr. Williams.
 

 He proceeded to a very hilly area on a road that connects the State of Tennessee with Southaven, Mississippi and was going over this road at a high rate of speed and alternately turning his lights on and off and cresting the hills. The last time he did so, his vehicle left the roadway and overturned, causing the injuries to Brian Flowers and the injuries
 
 *73
 
 that led to the death of Ashley Nicole Flowers.
 

 All these [sic] occurred in DeSoto County, therefore within the jurisdiction of this Court.
 

 THE COURT: Mr. Williams, you heard the Prosecutor relating to you and for the record what he thinks he could show in a trial of this case before a jury. Do you understand and recall the events that bring you here today?
 

 DEFENDANT WILLIAMS: Yes, sir, Your Honor, I do.
 

 THE COURT: Mr. Jones, Mr. Hodum, [counsel for Williams] have you all conducted your own investigation in this charge?
 

 DEFENSE COUNSEL, JONES: We have, Your Honor.
 

 BY THE COURT: That is, get sufficient evidence before a jury that would require me to let a jury determine his innocence or his guilt. Are you satisfied of that, Mr. Jones?
 

 DEFENSE COUNSEL, JONES: Yes, sir.
 

 THE COURT: Any question about where proper venue for the case should be?
 

 DEFENSE COUNSEL, JONES: No, sir, Your Honor.
 

 THE COURT: It appears that the Court has jurisdiction of the subject matter of this cause and personal jurisdiction of Jason Edward Williams.
 

 ¶ 4. The judge thereafter explained to Williams his trial rights, and queried him all the way through to ensure Williams’s understanding that with a guilty plea he would be waiving these rights. Williams expressly indicated throughout that he understood. The judge asked Williams if any promises were made to him by anyone with regard to leniency from the court in exchange for his admission of guilt. Williams indicated that no such promises had been made. The judge then asked Williams if he was satisfied with the work and services provided by his attorneys. Williams said, “Yes, sir.”
 

 ¶ 5. The judge accepted Williams’s plea of guilty for both offenses charged in his indictment. Williams was then sentenced to twenty years in the custody of the Mississippi Department of Corrections, for each offense, with four years suspended, and the sentences to run concurrently.
 

 ¶ 6. Represented by new counsel, Williams later filed a PCR petition in the trial court on May 12, 2008, and requested that his guilty pleas be set aside and that he be allowed to proceed to trial on the merits. Williams asserted the following assignments of error, which we quote verbatim:
 

 I. Trial court erred in failing to ensure that Williams was advised of and understood each of the elements of the crimes to which he was pleading guilty.
 

 II. Trial court erred in failing to determine whether Williams agreed with the State’s offer of proof, and in failing to make a finding on the record that the plea was voluntarily and intelligently made and that a factual basis existed for Williams’[s] guilty plea.
 

 III. Trial court erred in failing to advise Williams that a jury would not sentence him if he were convicted in a jury trial.
 

 IV. Trial court erred in only advising Williams that he was not entitled to appeal a plea of guilty, and by not advising Williams that he was entitled to appeal a jury conviction.
 

 V. Williams[’s] defense counsel was ineffective in failing to object to the trial court’s aforesaid errors or to raise said errors/issues at the plea or sentencing [proceeding].
 

 
 *74
 
 DISCUSSION
 

 ¶ 7. Before we discuss the merits of Williams’s respective claims, we first address the State’s contention that William’s PCR petition is barred by the statutory three-year limitation period set forth by Mississippi Code Annotated section 99-39-5(2) (Supp.2009). The State contends that this Court lacks jurisdiction to address the merits of the issues raised in Williams’s PCR petition, because Williams, who is represented by counsel in this matter, filed the petition on May 12, 2008, three years and a day after May 11, 2005, the date on which Williams pleaded guilty.
 

 ¶ 8. We find, however, that Williams timely complied with section 99-39-5(2). As the trial court noted in its order dismissing the PCR petition on the merits, the judgment of the trial court’s acceptance of Williams’s respective guilty pleas was not signed and filed with the circuit court clerk until May 26, 2005.
 

 ¶ 9. According to our supreme court, the “date of rendition of the judgment of the trial court in term time, as well as in vacation, is the date when the judgment is signed by the judge and filed with the clerk for entry on the minutes.... ”
 
 Temple v. State,
 
 671 So.2d 58, 59 (Miss.1996) (quoting
 
 Banks v. Banks,
 
 511 So.2d 933, 934-35 (Miss.1987)). “This marks formal evidence of a judgment’s rendition which is necessary for its execution or appeal.”
 
 Id.
 

 ¶ 10. The judgment accepting Williams’s guilty pleas was signed by the court and filed with the clerk on May 26, 2005. Thus, pursuant to
 
 Temple,
 
 Williams had until May 26, 2008, to file his PCR petition. As Williams’s petition was filed on May 12, 2008, the trial court had jurisdiction to address the merits of charges claimed therein. Accordingly, since Williams timely appealed the trial court’s summary denial of the petition, this Court now sits with appellate jurisdiction to review that judgment.
 

 STANDARD OF REVIEW
 

 ¶ 11. Denial of a petition for post-conviction relief is reviewed under an abuse of discretion standard.
 
 Brown v. State,
 
 872 So.2d 96, 98 (¶ 8) (Miss.Ct.App.2004). This Court will not overturn a lower court’s denial of post-conviction relief unless its factual findings are clearly erroneous.
 
 McClinton v. State,
 
 799 So.2d 123, 126 (¶ 4) (Miss.Ct.App.2001). For questions of law, however, our standard of review is de novo.
 
 Id.
 

 ¶ 12. Issues I, II, III, and IV each allege that Williams’s guilty pleas were invalid due to particular failures on the part of both the trial court and/or Williams’s defense counsel. In order to avoid repetitiveness, we address each grievance under one issue, rephrased as follows:
 

 I. Validity of Guilty Pleas
 

 ¶ 13. For a guilty plea to be valid it must be entered into “voluntarily, knowingly, and intelligently, ‘with sufficient awareness of the relevant circumstances and likely consequences.’”
 
 Carroll v. State,
 
 963 So.2d 44, 46 (¶ 8) (Miss.Ct.App.2007) (quoting
 
 Bradshaw v. Stumpf,
 
 545 U.S. 175, 183, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005)). “To determine whether the plea is voluntarily, knowingly, and intelligently given, the trial court must advise the defendant of his rights, the nature of the charge against him, as well as the consequences of the plea.”
 
 Burrough v. State,
 
 9 So.3d 368, 373 (¶ 11) (Miss.2009) (citation omitted). The burden of proving that a guilty plea was invalid rests with the defendant and must be proven by a preponderance of the evidence.
 
 Terry v. State,
 
 839 So.2d 543, 545 (¶ 7) (Miss.Ct.App.2002) (citation omitted).
 
 *75
 
 Ultimately, the validity of a guilty plea is determined on a case-by-case basis.
 
 Williams v. State,
 
 752 So.2d 410, 412 (¶ 4) (Miss.Ct.App.1999).
 

 A. The Elements of the Crimes
 

 ¶ 14. Williams argues that the trial court failed to ensure that he was informed of and understood each of the elements of the two crimes to which he had pleaded guilty. Williams maintains that, prior to accepting his guilty pleas, the trial court neither advised him of the elements of the crimes, nor queried his defense counsel as to whether they had explained the elements to him. Williams also asserts that the trial court failed to determine whether it had jurisdiction and venue in this matter. He thus contends that his guilty pleas cannot be held valid.
 

 ¶ 15. For support >of his argument, Williams points to this Court’s decision in
 
 Jones v. State,
 
 936 So.2d 993 (Miss.Ct.App.2006). There, the defendant Jones pleaded guilty to the crime of sexual battery of a minor child under the age of fourteen.
 
 Id.
 
 at 994 (¶ 2). Jones later filed a PCR petition claiming that his guilty plea was invalid because he was not informed of the elements of his charge.
 
 Id.
 
 at (¶ 3). This Court found that a question existed as to whether Jones knowingly entered his plea and remanded the matter back to the trial court for a determination as to whether the elements had been explained to Jones prior to the trial court’s acceptance of the guilty plea.
 
 Id.
 
 at 996-97 (¶¶ 13-23).
 

 ¶ 16. In
 
 Jones,
 
 we found that the trial court did not refer to the elements of the crime during the plea hearing, nor did the court ask counsel if the elements were explained to Jones.
 
 Id.
 
 at 996 (¶ 12). Even though the indictment specified the elements of the crime, the plea petition did not, and the trial judge only made reference to the plea petition during the plea hearing.
 
 Id.
 
 at (¶¶ 10-12). We also found that the prosecutor did not summarize the State’s evidence in the case, and we questioned whether the record contained an adequate showing of a factual basis for the offense.
 
 Id.
 
 at (¶ 10).
 

 ¶ 17. In our analysis, we took note of the United States Supreme Court’s opinion in
 
 Stumpf.
 
 There, the Supreme Court reversed the Court of Appeals for the Sixth Circuit which had found, inter alia, that the defendant had not understood when he entered a guilty plea that specific intent to cause death is a necessary element of the crime of aggravated murder.
 
 Stumpf,
 
 545 U.S. at 183, 125 S.Ct. 2398. Upholding the defendant’s guilty plea, the Supreme Court commented as follows:
 

 Where a defendant pleads guilty to a crime without having been informed of the crime’s elements, ... the plea is invalid.
 
 Henderson v. Morgan,
 
 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976).
 

 But the Court of Appeals erred in finding that Stumpf had not been properly informed before pleading guilty. In Stumpf s plea hearing, his attorneys represented on the record that they had explained to their client the elements of the aggravated murder charge; Stumpf himself then confirmed that this representation was true.
 
 See
 
 App. 135, 137-138. While the court taking a defendant’s plea is responsible for ensuring “a record adequate for any review that may be later sought,”
 
 Boykin v. Alabama,
 
 395 U.S. 238, 244, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) (footnote omitted), we have never held that the judge must himself explain the elements of each charge to the defendant on the record. Rather, the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of
 
 *76
 
 the crime were explained to the defendant by his own, competent counsel.
 

 Id.
 
 at 183, 125 S.Ct. 2398.
 

 ¶ 18. Applying this language to our findings in
 
 Jones,
 
 we concluded that “boilerplate language” in a plea petition that does not itself set out the elements of the crime, but merely assures “that the elements of the offense were explained to the accused,” does not meet the requirement emphasized in
 
 Stumpf
 
 that the record “accurately reflect” the defendant’s knowledge of the nature and elements of the offense.
 
 Jones,
 
 936 So.2d at 998 (¶¶ 19-20). “[A] trial court must assure itself [dui'ing a plea hearing accepting a guilty plea] that a defendant understands the nature and elements of the crime for which he is admitting guilt.”
 
 Id.
 
 at 995 (¶ 6) (citing
 
 Stumpf,
 
 545 U.S. at 183, 125 S.Ct. 2398).
 

 ¶ 19. Recognizing that our supreme court had not yet considered the effect of
 
 Stumpf, Jones
 
 provided the following observation:
 

 The Court has analyzed the authority on which
 
 Stumpf
 
 relied,
 
 Henderson v. Morgan,
 
 in holding that before a guilty plea can be valid, the defendant must know the elements of the crime. There are expert commentators on criminal procedure who found
 
 Henderson
 
 lacking in clarity in resolving the twin issues of which elements were critical and the necessary manner of notifying a defendant of these critical elements. WHI-TEBREAD & SLOBOGIN, CRIMINAL PROCEDURE, 641-42 (1993).
 
 Stumpf
 
 may have, sought to remove some of the ambiguities.
 

 Jones,
 
 936 So.2d at 997 (¶ 15).
 
 Jones
 
 then pointed to an opinion by the Mississippi Supreme Court that relied principally on
 
 Henderson. Id.
 
 at 997-98 (¶ 17). In
 
 Gaskin v
 
 .
 
 State,
 
 618 So.2d 103, 105 (Miss.1993), the defendant was indicted on chai’ges of armed robbery and capital murder as a habitual offender. Pursuant to a plea bargain agreement, the State recharged Gaskin with murder and armed robbery by information after Gaskin waived indictment by the grand jury.
 
 Id.
 
 The supreme court found that there was no discussion of the elements of the offenses charged by the information at Gas-kin’s plea hearing.
 
 Id.
 
 at 107. The supreme court, however, upheld the guilty plea because the information had specified the elements of the crime and because Gaskin had signed a petition that restated the charges in the information and which certified that he had received a copy of the information.
 
 Id.
 
 The court reasoned that failure of the trial court to advise the defendant of the elements was harmless error where the defendant was advised by other sources about the critical elements of the crime.
 
 Id.
 
 at 108.
 

 ¶ 20. The
 
 Jones
 
 Court observed that the
 
 Gaskin
 
 facts were somewhat similar to those found attending Jones’s guilty plea hearing, and remarked that “the
 
 Gaskin
 
 decision did not have the benefit of the
 
 Stumpf
 
 requirement that the ‘record accurately reflects the nature of the charge and the elements of the crime were explained to the defendant’ by his counsel or by the court.”
 
 Jones,
 
 936 So.2d at 997-98 (¶ 17). Having found
 
 Gaskin
 
 factually distinguishable, and thus inapplicable to the question then before this Court,
 
 Jones
 
 did not engage in a discussion of
 
 Gaskin’s,
 
 prece-dential effect in light of
 
 Stumpf. Id.
 
 at 998 (¶ 19).
 

 ¶ 21. Concluding on this issue, the
 
 Jones
 
 Court stated the following:
 

 Stumpf
 
 requires a reliable indication that the defendant has had the elements of his offense explained. To the extent standard forms are used for guilty pleas, the trial judges who take the pleas should assure that the record at the
 
 *77
 
 hearing reveals the accuracy of a form statement that the elements were explained. The forms to some extent are a back-up to matters that a trial judge might overlook.
 

 [[Image here]]
 

 Our 'view of the importance of
 
 Stumpf
 
 suggests that we are finding two tiers to the requirements of notice at a guilty plea hearing. Certain knowledge must be clearly explained at the hearing — the record must “accurately reflect” the accused’s knowledge. Other matters such as the minimum and maximum sentences for an offense might be proved in lesser ways. We do not find it advisable to address all the implications of our interpretation of
 
 Stumpf.
 
 The state supreme court will make the binding interpretations, so restraint at this intermediate court is always in order.
 

 Id.
 
 at (¶¶ 19-20).
 

 ¶ 22. In the present case, as Williams points out and the State concedes, the trial judge did not explain the elements of the two charges at the plea hearing; nor did the judge ask defense counsel whether they had advised Williams of the elements. Additionally, similar to what we found in
 
 Jones,
 
 the two plea petitions signed by Williams did not set forth the elements of the crimes. Rather, each petition referred only to the indictment that specifies the elements for each respective crime, and each contains a statement sworn to by Williams acknowledging that he was advised by his lawyer(s) of the elements.
 

 ¶ 23. However, the State contends that unlike
 
 Jones,
 
 the prosecutor in this case gave a detailed recitation of the facts the State intended to prove if Williams had elected to proceed to trial, which expressly laid out all of the essential elements of the crimes charged. The State points out that Williams stated on the record that he recalled and understood that the facts recited by the State were the bases for his charges. The State maintains that because the statement of the facts included the elements of the crimes, Williams’s on-the-record recognition constitutes an acknowledgment that he understood the elements of the crimes as charged.
 

 ¶ 24. The State further maintains that
 
 Gaskin
 
 remains good law and in no way offends the United States Supreme Court’s holding in
 
 Stumpf. Gaskin,
 
 according to the State, merely holds that an explanation of the elements of the crime to which a defendant wishes to plead guilty can be explained to the defendant by a source other than the trial judge. Here, that source was the prosecutor, who at the behest of the trial court set forth the elements of culpable-negligence manslaughter and aggravated assault during the plea hearing in front of Williams and his attorneys. The State submits that this affirmatively demonstrates that Williams was made aware of the necessary elements.
 

 ¶ 25. The State’s argument has merit. Since our decision in
 
 Jones,
 
 our supreme court has yet to speak to either
 
 Stumpf
 
 or
 
 Jones;
 
 we note also that, to date, the United States Supreme Court has not expounded any further on
 
 Stumpf.
 
 However, the Tennessee Supreme Court has reviewed
 
 Stumpf,
 
 and it lends credence to the State’s position.
 

 ¶ 26. In
 
 State v. Crowe,
 
 168 S.W.3d 731, 734 (Tenn.2005), a defendant was indicted on the charge of first-degree murder and subsequently pleaded nolo contendere to facilitation of first-degree murder. At the plea hearing, the court did not discuss with the defendant the nature and elements of the crime, and defense counsel did not represent on the record that he had done so.
 
 Id.
 
 at 751. In a hearing on his motion to vacate his guilty plea, the defendant testified that he always had taken the position with his lawyer that he merely was
 
 *78
 
 present at the scene of the murder, and he had not participated or assisted in any way with the murder.
 
 Id.
 

 ¶ 27.
 
 Crowe
 
 held that the plea of nolo contendere was not entered into with knowledge of the nature and elements of the crime of facilitation, and the Court vacated the plea.
 
 Id.
 
 at 752. In its analysis, the
 
 Crowe
 
 court provided the following analysis with respect to its interpretation of
 
 Stumpf,
 
 which we find insightful:
 

 The United States Supreme Court has recently again emphasized that a trial judge need not personally “explain the elements of each charge to the defendant on the record” so long as “the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel.”
 
 See Stumpf,
 
 545 U.S. [at 183], 125 S.Ct. 2398. We also agree that a reviewing court may be able to determine that a defendant gained from other sources an adequate understanding of the offense and notice of the nature of the charge to which he or she is entering a plea, even if a trial court fails to comply with [Tennessee Rule of Criminal Procedure] [] 11(c)(1). For example, the defendant may be informed of the nature of the offense by the allegations of the indictment.
 
 See, e.g., Henderson,
 
 426 U.S. at 649 n. 2, 96 S.Ct. 2253 (White, J. concurring) (“In those cases in which the indictment is read to the defendant by the court at arraignment or at the time of his plea, his plea of guilty may well be deemed a factual admission that he did what he is charged with doing so that a judgment of conviction may validly be entered against him.”);
 
 Bryan [v. State,
 
 848 S.W.2d 72, 76 (Tenn.Crim.App.1992)] (rejecting the defendant’s claim that he had not understood the nature of the offenses to which he had pleaded guilty and noting that the elements of the offenses had been alleged in the indictment). Another source from which a defendant may gain an understanding of the nature of the offense is the prosecution’s summation at the plea submission hearing of the facts relevant to the elements of the plea offense.
 
 See, e.g., State v. Johnson,
 
 253 Conn. 1, 751 A.2d 298, 322 (2000) (citing cases). Furthermore, in some cases the reviewing court may be able to determine that the offense or the relevant element of the offense is a self-explanatory legal term, so simple in meaning that a layperson can be expected to understand it.
 
 See, e.g., Easter v. Norris,
 
 100 F.3d 523, 526 (8th Cir.1996) (holding that terms “enter” and “intent” in context of burglary did not require further explanation at taking of guilty plea);
 
 United States v. Wetterlin,
 
 583 F.2d 346, 350 (7th Cir.1978) (stating that charge of “conspiracy” is not a self-explanatory legal term so simple in meaning that it can be expected or assumed that a layperson understands it);
 
 Waits v. People,
 
 724 P.2d 1329, 1334-35 (Colo.1986) (holding that district court was not required to define terms “intent,” “specific intent,” and “theft” for crime of burglary);
 
 State v. Mayer,
 
 139 Idaho 643, 84 P.3d 579, 584 (Idaho Ct.App.2004) (stating that, “with respect to the element of penetration, the layperson’s meaning of ‘rape’ corresponds with the legal definition set out in [the statute]”);
 
 State v. Young,
 
 646 So.2d 445, 447 (La.Ct.App.1994) (rejecting the defendant’s claim that his plea was involuntary and noting that “DWI, fourth offense” is a “crime in which the title conveys its elements”);
 
 see generally
 
 5 Wayne R. LaFave, et al., Criminal Procedure, § 21.4(c) (2d ed. 1999 & 2005 Supp.). Finally, as the United States Supreme Court has recognized, in many cases it will be possible
 
 *79
 
 for a reviewing court to determine that the defense lawyer advised the defendant about the nature of the plea offense, even when the trial court fails to do so.
 
 [Bradshaw,
 
 545 U.S. at 183, 125 S.Ct. 2398] (“Where a defendant is represented by competent counsel, the court usually may rely on that counsel’s assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty.”);
 
 Henderson,
 
 426 U.S. at 647, 96 S.Ct. 2253. In this case, the record does not reflect that the defendant gained an understanding of the nature of the plea offense from either the trial judge, or defense counsel, or any other source.
 

 Id.
 
 at 750-51.
 

 ¶ 28. Certainly, we see no constitutional infirmity with the elements of the crime to which a defendant wishes to plead guilty having being explained to the defendant by the prosecutor rather than the judge at a plea hearing. When determining whether a record accurately reflects that a defendant received real notice of the true nature of the charge as required by due process, a prosecutor’s on-the-record statement properly identifying the elements of the crime should carry no less weight than an assurance to the court by either the defendant or defense counsel that counsel did so at some previous point off the record.
 

 ¶ 29. Here, as previously mentioned, the prosecutor stated on the record in front of Williams and his legal counsel at the plea hearing the following:
 

 The State would show beyond a reasonable doubt with credible and admissible evidence, in Count 1[,] the Defendant did on or about the 24th day of October of 2003 kill Ashley Nicole Flowers by culpable negligence; and in Count 2, on that same day, did recklessly cause serious bodily injury to Brian Flowers under circumstances manifesting extreme indifference to the value of human life by operating his vehicle, in which Brian Flowers was a passenger, at night without the use of headlights, and said conduct resulted in the vehicle leaving the roadway, crashing and causing Brian Flowers to suffer a fractured vertebra.
 

 ¶ 30. In our opinion, this on-the-record statement by prosecutor, essentially reiterating the charging language in the indictment, evinces an accurate showing that Williams was informed of the essential elements of the two crimes charged, culpable-negligence manslaughter proscribed by Mississippi Code Annotated section 97-3-47 and aggravated assault under Mississippi Code Annotated section 97-3-7(2)(a). Thus, we find this case distinguishable from
 
 Jones.
 

 ¶ 31. The statutory elements of culpable-negligence manslaughter are “an unlawful killing by the culpable negligence of another.”
 
 Ramage v. State,
 
 914 So.2d 274, 276 (¶ 5) (Miss.Ct.App.2005) (citing Miss. Code Ann. § 97-3-47 (Rev.2000)). Aggravated assault occurs when a person “causes such injury ... recklessly under circumstances manifesting extreme indifference to the value of human life.”
 
 Nelson v. State,
 
 361 So.2d 343, 344 (Miss.1978) (quoting Miss.Code Ann. § 97-3-7(2)(a)).
 

 ¶ 32. With one exception, which will be discussed shortly, the prosecutor sufficiently identified the essential elements of both crimes. Of particular significance, is the fact that the essential conduct elements were described to Williams. The prosecutor pronounced in open court that Williams acted “under circumstances manifesting extreme indifference to the value of human life.” This connotes the meaning of recklessness under subsection (2)(a) of section 97-3-7, and it is also what
 
 *80
 
 characterizes culpable negligence under section 97-3-47. It is well settled in this state that both offenses, as charged, require the same degree of criminal negligent or recklessness conduct to sustain a conviction, as the
 
 Nelson
 
 court explains:
 

 We hold [the] words [recklessly under circumstances manifesting extreme indifference to the value of human life] are analogous to our definition of culpable negligence in homicide cases set forth in
 
 Smith v. State,
 
 197 Miss. 802, 20 So.2d 701 (1945) as follows:
 

 (C)ulpable negligence should be defined as the conscious and wanton or reckless disregard of the probabilities of fatal consequences to others as result of the wilful (sic) creation of an unreasonable risk thereof. (197 Miss. at 817, 20 So.2d at 705).
 

 Nelson,
 
 361 So.2d at 344 (footnote omitted);
 
 see also Gray v. State,
 
 427 So.2d 1363, 1367 (Miss.1983) (“The degree of negligence required to sustain a conviction under [Mississippi Code Annotated section 97-3-47] is equivalent to that required under the Mississippi aggravated assault statute.”).
 
 [1]
 
 With the character of Williams’s conduct having been accurately described in his presence, conduct which the State charged caused severe injury to Brian and led to the death of Ashley, and Williams’s subsequent on-the-record acknowledgment to the trial court that he understood why he was pleading guilty, we cannot say that the record in this case negates a finding that Williams was properly informed of the nature of the crimes for which he was admitting guilt.
 
 See Jones,
 
 936 So.2d at 995 (¶ 6) (“At the hearing accepting a guilty plea, a trial court must assure itself that a defendant understands the nature and elements of the crime for which he is admitting guilt.”).
 

 ¶ 33. We recognize that the prosecutor failed to describe the killing as “unlawful” in his statement of the case. Our concern, however, that this critical element, which — unlike some elements — is not an abstract concept, was not mentioned at the plea hearing is abated by the fact it was twice set forth in the indictment, once for each count. Also, Williams attested in his plea petition that he and his attorneys had discussed all possible defenses that he may have had to the charges. As was stated in
 
 Jones,
 
 “[t]he forms to some extent are a back-up to matters that a trial judge might overlook.”
 
 Id.
 
 at 998 (¶ 19). Further, the trial court received assurances from Williams’s attorneys that they had fully investigated the case. Therefore, we find such an omission, in this instance, to be harmless error.
 
 See generally Gaskin,
 
 618 So.2d at 108.
 

 ¶ 34. Finally, with regard to the assertion that the trial court failed to determine that it had proper jurisdiction and venue in this matter, the record reveals that the trial court made an on-the-record finding that it had both subject matter jurisdiction of the cause before it and personal jurisdiction over Williams. On this point, Williams simply makes a blanket assertion in his brief that the trial court failed to make a determination that it had proper jurisdiction and venue in this matter. But, Williams fails to point to any evidence in the record that might support his claim.
 

 ¶ 35. We find that the record contains sufficient evidence that Williams pleaded guilty to the crimes, culpable-negligence manslaughter and aggravated assault, with knowledge and understanding of the respective elements of each crime. We also find that the trial court made a proper determination with regard to jurisdiction
 
 *81
 
 and venue. This assignment of error is without merit.
 

 B. Factual Bases
 

 ¶ 36. Williams contends that the trial court failed to make a determination that factual bases existed for his guilty pleas. Although Williams does not dispute that the State made an offer of proof to support its case against him in this matter, he contends that the trial court failed to ask whether he agreed or disagreed with that proof. Williams maintains that following the State’s offer of proof, the trial court simply asked him whether he understood and recalled the events which brought him to court that day. Without providing this Court any specifics as to what proof he disagreed with, Williams insists that a trial court cannot make a determination that a factual basis exists unless a defendant is given the opportunity to contradict the State’s offer of proof.
 

 ¶ 37. Whether or not it can fairly be said that Williams’s assurance to the trial court, following the State’s offer of proof, that he understood and recalled the events that brought him before the court constituted an affirmative confession to all of the facts articulated by the prosecutor is debatable. At the very least, we can say this portion of the record “shows an ambiguous expression of qualified guilt coupled with ... [no] protestation of innocence.”
 
 See, e.g., Bennett v. State,
 
 933 So.2d 930, 940 (¶ 24) (Miss.2006). We disagree, however, with Williams’s assertion that he was not given the opportunity to contradict the State’s offer of proof. If Williams believed that the State was providing information inconsistent with his recollections, it was incumbent upon him to bring the matter to the court’s attention.
 
 See, e.g., Walton v. State,
 
 16 So.3d 66, 71 (¶ 10) (Miss.Ct.App.2009).
 

 ¶38. That said, the law does not require a criminal defendant to admit guilt before the court may accept his or her guilty plea.
 
 Reynolds v. State,
 
 521 So.2d 914, 917 (Miss.1988) (“admission of guilt is not a constitutional requisite of an enforceable plea”). Rather, it demands a “knowing and voluntary action” by the defendant, along with “an independent evidentiary suggestion of guilt.”
 
 Id.
 

 ¶ 39. In
 
 Burrough,
 
 9 So.3d at 373 (¶ 14), the supreme court reiterated the factual-basis requirement with respect to guilty pleas as follows:
 

 Pursuant to Rule 8.04(A)(3) of the [Uniform Rules Circuit and County Court], “[b]efore the trial court may accept a plea of guilty, the court must determine that the plea is voluntarily and intelligently made and that there is a
 
 factual basis
 
 for the plea.” (Emphasis added). The factual-basis component of the rule requires that, “before it may accept the plea, the circuit court have before it, inter alia, substantial evidence that the accused did commit the legally defined offense to which he is offering the plea.”
 
 Corley v. State,
 
 585 So.2d 765, 767 (Miss.1991). What facts must be shown depend on the crime and its assorted elements.
 
 Id.
 
 There are numerous ways by which the facts may be found, but what ultimately is required is “there must be enough that the court may say with confidence the prosecution could prove the accused guilty of the crime charged.”
 
 Id.
 
 (citing
 
 United States v. Broce,
 
 488 U.S. 563, 570, 109 S.Ct. 757, 764, 102 L.Ed.2d 927, 936 (1989)).
 

 ¶ 40. In the case at bar, after the prosecutor stated the elements for the crimes of culpable-negligence manslaughter and aggravated assault, the prosecutor provided the following factual assessment of the State’s case against Williams:
 

 
 *82
 
 The facts would show, Your Honor, that Mr. Williams at the time was 21 years old. He had five minor passengers in his vehicle, the oldest being 17; the youngest being 13, and that was Ashley Nicole Flowers. Around eight o’clock that night is when this incident occurred, but just prior to that, Mr. Williams had purchased a large amount of alcohol with funds provided to him by some of the minors in the vehicle. Some of those minors were drinking, along with Mr. Williams.
 

 He proceeded to a very hilly area on a road that connects the State of Tennessee with Southaven, Mississippi and was going over this road at a high rate of speed and alternately turning his lights on and off and cresting the hills. The last time he did so, his vehicle left the roadway and overturned, causing the injuries to Brian Flowers and the injuries that led to the death of Ashley Nicole Flowers.
 

 ¶ 41. In
 
 Dendy v. State,
 
 224 Miss. 208, 212, 79 So.2d 827, 828-29 (1955), the supreme court upheld a conviction of culpable-negligence manslaughter based upon the operation of an automobile, finding as follows:
 

 The great weight of the evidence amply supports the jury’s verdict and the conclusion that appellant, recklessly and with a willful and wanton disregard of the safety of others and of human life, attempted at a high rate of speed to pass the Perry car at the crest of the hill, before he could see where he was going, or who was coming toward him; and that as a direct result of appellant’s culpable negligence in these respects Mr. Sanders was killed.
 

 ¶ 42. In the present case, we find that in operating his vehicle in the dark of night without the use of headlights in the manner described by the State substantially establishes that Williams unlawfully acted with reckless behavior under circumstances manifesting extreme indifference to the value of human life. Said conduct caused the death of Ashley and the severe injury to Brian. Accordingly, we find substantial evidence that Williams committed the crimes charged, culpable-negligence manslaughter and aggravated assault.
 

 ¶ 43. We find no merit with Williams’s argument that he was not provided an opportunity to contradict the State’s offer of proof. We also find that factual bases existed for Williams’s guilty pleas; thus, we find that the guilty pleas were submitted to the trial court, intelligently and voluntarily.
 

 C. Imposition of Sentence
 

 ¶ 44. Williams contends that although the trial court advised him that he was giving up the right to a jury trial by pleading guilty, neither the court nor his counsel informed him that the jury would not sentence him if he were convicted in a jury trial. Thus, Williams asserts that he was not fully apprised of the “consequences of his plea.” Had he known this to be the case, he claims he would not have pleaded guilty.
 

 ¶ 45. This contention is premised on a fallacy. The law requires that before accepting a criminal defendant’s guilty plea the trial court must fully inform the defendant of the likely “consequences” that may “direct[ly]” result from the defendant’s decision.
 
 Magyar v. State,
 
 18 So.3d 807, 811 (¶ 9) (Miss.2009). The law does not require the trial court to ferret out and dispel an inconsequential misapprehension, such as the one we find before us here.
 

 ¶ 46. In Mississippi, with the exception of our state’s death penalty statutory sentencing scheme in capital murder cases, there are three instances where a jury
 
 *83
 
 may impose sentence upon a conviction of a felony criminal offense.
 
 Taggart v. State,
 
 957 So.2d 981, 991 (¶ 26) (Miss.2007). Those instances are where the defendant has been found guilty of “kidnaping (Miss. Code Ann. § 97-3-53 (Rev.2006)), rape (Miss.Code Ann. § 97-3-65(4)(a) (Rev. 2006)), and/or armed robbery (Miss.Code Ann. § 97-3-79 (Rev.2006)).”
 
 Id.
 

 ¶ 47. Williams was charged with, and pleaded guilty to, culpable-negligence manslaughter and aggravated assault. The imposition of sentence for each of these offenses rested solely within the trial court’s sound discretion.
 
 Burrough,
 
 9 So.3d at 372 (¶ 10) (citing
 
 Reynolds v. State,
 
 585 So.2d 753, 756 (Miss.1991)). And the trial court had the authority to impose any sentence allowed by law.
 
 Id.
 

 ¶ 48. The only question we are concerned with on this point, as it is framed before us, is whether Williams was made aware of the trial court’s authority with regard to the maximum and minimum penalties provided by law, a fact of consequence. Based on our review of the record, he was.
 

 ¶ 49. First, through his plea petitions, Williams was specifically informed of the statutory maximum and minimum punishment that each crime carries. Each document expressly disclosed to Williams that the final decision as to his punishment, should he enter a plea of guilty, rested with the trial court. Under his sworn oath, Williams therein acknowledged that he understood this.
 

 ¶ 50. Then at the plea healing, Williams was re-informed by the trial judge that the crime of culpable-negligence manslaughter consequently carries a potential “twenty years in prison and a $10,000 fine, with a two-year mandatory minimum.” Miss.Code Ann. § 97-3-25 (Rev.2006) (sentence); Miss.Code Ann. § 99-19-32(1) (Supp.2009) (fine).
 
 [2]
 
 For aggravated assault, Williams again was told that punishment “can carry a maximum of twenty years in prison with a $10,000 fine, [with] no mandatory minimum.... ” Miss. Code Ann. § 97-3-7(2)(a) (Rev.2006); Miss.Code Ann. § 99-19-32(1). The trial judge thereafter asked Williams whether anyone had promised him any leniency from the court in order to persuade him to admit guilt, to which Williams stated, “No, sir.” The trial court accepted Williams’s respective pleas and then sentenced him, as previously mentioned, to the statutory maximum for each offense, with four years suspended, and both sentences to run concurrently.
 

 ¶ 51. Accordingly, this claim of error is without merit.
 

 D. Right to Appeal
 

 ¶ 52. Williams contends that although the trial court advised him that he was not entitled to appeal a plea of guilty, he was not advised by either the court or his counsel that he would be allowed to appeal a jury conviction. Again, Williams re-asserts that he was not made fully aware of the “likely consequences” of his guilty pleas.
 

 ¶ 53. The record, however, discloses otherwise. In both plea petitions, Williams swore that he understood he could plead not guilty and proceed to a trial by jury, and that he had the right to “any appeal” therefrom. Furthermore, during the plea colloquy, before accepting Williams’s guilty pleas, the trial court ex
 
 *84
 
 pressly said to Williams, “I want ... you to understand fully that if I accept your offered pleas today, for all practical purposes, you are giving up your right to appeal any action taken here at the Circuit Court level to the Supreme Court[.]”
 

 ¶ 54. Accordingly, we find no merit in this contention.
 

 II. Ineffective Assistance of Counsel
 

 ¶ 55. Williams charges that his defense counsel was deficient in failing to raise the aforementioned points with him prior to his decision to plead guilty. He maintains that had counsel not failed to do so, the outcome in this matter likely would have been different.
 

 ¶ 56. In evaluating an ineffective-assistance-of-counsel claim in a guilty-plea proceeding, we apply the two-part inquiry announced in
 
 Strickland v. Washington,
 
 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) for challenges claiming ineffective trial assistance.
 
 See, e.g., Burrough,
 
 9 So.3d at 375 (¶ 22) (citing
 
 Coleman v. State,
 
 483 So.2d 680, 683 (Miss.1986)). The
 
 Strickland
 
 test “requires the defendant to show: (1) that his counsel’s performance was deficient (fell below the objective standard of reasonableness), and (2) that the deficiency prejudiced his defense.”
 
 Id.
 
 (citing
 
 Strickland,
 
 466 U.S. at 687, 104 S.Ct. 2052). In the context of guilty plea proceedings, the defendant must show that there is a reasonable probability that, were it not for counsel’s errors, he or she would not have pleaded guilty and would have insisted on going to trial, and the outcome would have been different.
 
 Hannah v. State,
 
 943 So.2d 20, 24 (¶ 7) (Miss.2006). The supreme court has held that “a reasonable probability arises when the ineffectiveness is of such sufficient moment that the integrity of the proceeding or our confidence in the outcome has been shaken.”
 
 Id.
 
 (citing
 
 Leatherwood v. State,
 
 539 So.2d 1378, 1385 (Miss.1989)).
 

 ¶ 57. With this claim, Williams merely re-asserts the same grievances he had with the trial court’s alleged failures, and he charges that his attorneys were responsible for these shortcomings also. Williams’s entire argument on this issue is that “had [he] been adequately informed of the circumstances and potential consequences of the charge against him, his plea[s] of guilty, and the relevant law, as required by the Constitution, he would not have entered [his] plea[s] of guilty.”
 

 ¶ 58. Williams fails to demonstrate either
 
 Strickland
 
 prong. Having found no merit to Williams’s claim that his guilty pleas were not valid, we find no merit to his ineffective-assistance-of-counsel claim.
 

 ¶ 59. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE, P.J., GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.
 

 [1]
 

 . According to one of his plea petitions, the charge to which Williams was pleading guilty was delineated as “personal injury by culpable negligence (aggravated assault).’’
 

 [2]
 

 . Although Miss.Code Ann. § 97-3-25 contains a fine provision, it is not applicable when the sentenced imposed is to a term in the penitentiary for more than one year.
 
 Felder v. State,
 
 876 So.2d 372, 374 (¶ 8) (Miss.2004). "[Section] 97-3-25 effectively has no provision for a fine in such a circumstance!,]” as such, section 99-19-32(1) controls.
 
 Id.