IRVING, P.J.,
for the Court:
¶ 1. Bill Nick Argol pleaded guilty to the sexual exploitation of a minor and to three separate counts of fondling. The DeSoto County Circuit Court sentenced him to thirty years in the custody of the Mississippi Department of Corrections followed by ten years of post-release supervision. Argol filed two motions for post-conviction relief (PCR), which the circuit court dismissed.[1] Feeling aggrieved, Argol appeals *851 and raises five issues, which we quote below:
I. The lower ... court erred in denying Argol an evidentiary hearing on his petition(s) for post[-]conviction[-]relief.
II. The lower ... court erred in failing to find that [t]he Alford plea is prohibited under Mississippi law, and in finding no error when [t]he trial court admittedly enhanced ar-gol’s sentence due to his entry of an Alford plea.
III. The lower review court erred in finding that Argol did not receive ineffective assistance of counsel at the trial level.
IV. The lower ... court erred in finding that the trial court did not commit plain error at the plea hearing as well as the sentencing hearing.
V. The lower review court erred in finding that Argol’s sentence was not disproportionate.
¶ 2. In the interest of both clarity and brevity, we have recast Argol’s issues as follows: (1) whether Argol’s Alford plea was voluntary, in accordance with Mississippi law, and whether the circuit court improperly used his Alford plea to enhance his sentence; (2) whether Argol received ineffective assistance of counsel; (3) whether Argol’s sentences are disproportionate to his crime; and (4) whether the circuit court erred in denying Argol an evidentiary hearing on his PCR motions. Finding no error, we affirm.
FACTS
¶ 3. A DeSoto County grand jury indicted Argol on four counts of sexual battery and one count of sexual exploitation of a minor. Several days later, the State filed a bill of information charging Argol with three counts of fondling. The State offered Argol a plea agreement, in which the State would dismiss Counts I-IV of the indictment in exchange for his pleas of guilty to the three counts of fondling contained in the bill of information and the remaining count of the indictment.
¶ 4. Argol confessed to Commander Mark Blackson and Lieutenant Michael Gurley, of the DeSoto County Sheriffs Department, that he “had [had] sexual intercourse with [the victim] from [beginning when she was fifteen years], old to [the] present[,] approximately [twenty-five] times[.]” Argol later insisted that he was intoxicated at the time of the interrogation and was forced to confess.
¶ 5. Argol later filed a motion to suppress the statement that he made to Commander Blackson and Lieutenant Gurley. At the hearing on Argol’s motion to suppress, Commander Blackson testified that Argol’s wife contacted the sheriffs department and alleged that Argol had engaged in inappropriate contact with her daughter, who was also his stepdaughter. Commander Blackson stated that he and Lieutenant Gurley filled out the top portion of the sheet on which Argol wrote his statement. Commander Blackson explained that he also "wrote the question-and-answer portion on the sheet beneath Argol’s statement. Argol read this portion of the statement to ensure that Commander Blackson had written the truth and initialed underneath the question-and-answer section so that nothing would be added to the sheet after his initials. Commander Blackson insisted that he did not force Argol to make a statement and that he did not make any promises to him.
¶ 6. At the suppression hearing, Argol testified that both Commander Blackson and Lieutenant Gurley had threatened him with time in a federal prison. Additionally, Argol stated that he did not read any of *852 the forms that the officers gave to him before he signed them. Argol insisted that he had never had any inappropriate contact with his stepdaughter and that he only confessed to the crime because he was afraid of the officers.
¶ 7. Lieutenant Gurley testified that he was in the interrogation room with Commander Blackson when Argol gave his confession. He maintained that Argol was never threatened with time in a federal prison. Additionally, Lieutenant Gurley stated that, based on what he witnessed during the interrogation, Argol’s statement was given voluntarily.
¶ 8. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 9. The circuit court may summarily dismiss a PCR motion without an evidentiary hearing “[i]f it plainly appears from the face of the motion, any annexed exhibits[,] and the prior proceedings in the case that the movant is not entitled to any relief.” Miss.Code Ann. § 99-39-11(2) (Supp.2012). An appellate court will not reverse a circuit court’s dismissal of a PCR motion unless the circuit court’s decision was clearly erroneous. Means v. State, 43 So.3d 438, 441 (¶ 6) (Miss.2010). However, questions of law are reviewed de novo. Id.

I. Alford Plea

a. Involuntary and Invalid Plea

¶ 10. Argol contends that his plea was involuntary because the circuit court failed to advise him of the elements of the charged crimes, and the court failed to independently affirm that his trial counsel had advised him of the elements of the charged crimes. A plea is considered voluntary and intelligent if the circuit court “advise[s][a] defendant of his rights, the nature of the charge[s] against him, as well as the consequences of the plea.” Burrough v. State, 9 So.3d 368, 373 (¶ 11) (Miss.2009).
¶ 11. Argol entered an Alford[2] plea. An Alford plea is valid if it is made after the defendant has “knowingly and intelligently concluded that his best interests require entry of the guilty plea.” Cougle v. State, 966 So.2d 827, 830 (¶ 14) (Miss.Ct.App.2007) (citations omitted). Although it is ideal for the circuit court to explain the elements of the offenses to a defendant when a plea is accepted, the failure to do so does not automatically render a guilty plea invalid. The United States Supreme Court has determined that the critical issue is whether the defendant was aware of the nature of the offenses from whatever source. See Bradshaw v. Stumpf, 545 U.S. 175, 182-83, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005).
¶ 12. Here, Argol’s indictment laid out the elements of the sexual-exploitation charge. Therefore, we find that Argol had sufficient notice of the elements of the sexual-exploitation charge. See Sanderson v. State, 883 So.2d 558, 561 (¶ 9) (Miss.2004). Neither the bill of information nor the plea petition laid out the elements of the fondling charges. Nevertheless, Argol acknowledged in his plea petition that his attorney had advised him of the nature of the charges and any possible defenses to the charges. Moreover, even though the circuit court did not recite the elements of the crimes during the plea hearing, the prosecutor made an on-the-record statement properly identifying the elements of both crimes.
¶ 13. This Court has previously held that a prosecutor’s on-the-record state *853 ment of the elements of the crime charged sufficiently informs a defendant of the elements of the crime. Williams v. State, 31 So.3d 69, 79 (¶ 28) (Miss.Ct.App.2010). In Williams, the circuit court failed to inform the defendant of the elements of the crimes that he had pleaded to, and it failed to inquire whether defense counsel had informed the defendant of the elements of the crimes. Id. at 77 (¶ 22). Additionally, the defendant’s plea petitions did not “set forth the elements of the crimes.” Id. However, at the plea hearing, the prosecutor gave a “detailed recitation of the facts the State intended to prove if [the defendant] had elected to proceed to trial, which expressly laid out all of the essential ele^ ments of the crimes charged.” Id. at (¶ 23). This Court stated that there was “no constitutional infirmity with the elements of the crime to which a defendant wishe[d] to plead guilty [when the elements of the crime had been] explained to the defendant by the prosecutor rather than the judge at a plea hearing.” Id. at 79 (¶ 28).
¶ 14. We see no reason to hold differently here. The prosecutor’s on-the-record statement at the plea hearing, made in front of Argol, expressly laid out all of the essential elements of sexual exploitation of a minor and of fondling. Accordingly, we find that the prosecutor’s statements made during the plea hearing sufficiently informed Argol of the elements of the charges against him, and Argol entered a voluntary Alford plea.

b. Alford Pleas Prohibited

¶ 15. Argol claims that Alford pleas are prohibited in Mississippi because Rule 8.04 of the Uniform Rules of Circuit and County Court does not list the Alford plea as an option. However, Argol gives no authority other than Rule 8.04 to support his claim. Even though Rule 8.04 does not list an Alford plea as an option for a defendant, neither the Mississippi Supreme Court nor this Court has ever stated that an Alford plea is prohibited in this state. This Court has previously held that a defendant has entered a valid Alford plea. See, e.g., Smith v. State, 86 So.3d 276, 282 (¶¶ 17-20) (Miss.Ct.App.2012). Without evidence to the contrary, we cannot hold that Alford pleas are prohibited in this state. Accordingly, this issue is without merit.
c. Sentence Enhanced
¶ 16. Argol argues that the circuit court erroneously enhanced his sentence because he entered an Alford plea. We disagree. The court noted, during sentencing, that it felt that Argol “was taking responsibility for his actions .... but[,] in this [c]ourt’s view[,] not full responsibility.” Our supreme court has determined that, at sentencing, a circuit court may consider whether a defendant takes responsibility for his involvement in a crime. Hersick v. State, 904 So.2d 116, 128 (¶ 49) (Miss.2004). Here, the circuit court did not enhance Argol’s sentence because he entered an Alford plea. It only took into consideration whether Argol was taking full responsibility for his actions. This issue is without merit.

II. Ineffective Assistance of Counsel

¶ 17. Argol asserts that he received ineffective assistance of counsel throughout the proceedings in the circuit court. When evaluating an ineffective-assistance claim regarding guilty-plea proceedings, appellate courts apply “essentially ... the same two-part inquiry as that used for challenges claiming ineffective trial assistance.” Burrough, 9 So.3d at 375 (¶ 22). The inquiry requires the defendant to show “that his counsel’s performance was deficient ..., and ... that the deficiency prejudiced his defense.” Id. (citing Strickland v. Washington, 466 U.S. 668, *854 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). As applied to the plea process, “the defendant must show that, were it not for counsel’s errors, he would not have pleaded guilty and would have insisted on going to trial.” Id (citing Coleman v. State, 483 So.2d 680, 683 (Miss.1986)).

a. Suppression Hearing

¶ 18. Argol contends that his trial counsel was ineffective during his suppression hearing because counsel: (1) failed to address Argol’s intoxication level during the confession and during the hearing, (2) failed to request that the witnesses be sequestered during the suppression hearing, (3) failed to object to hearsay during the hearing, and (4) failed to review a recorded statement made to a patrol officer. This Court has previously held that a voluntary guilty plea waives an ineffective-assistance-of-counsel claim “except insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea.” Hill v. State, 60 So.3d 824, 827 (¶ 6) (Miss.Ct.App.2011). As we have found that Argol entered a valid plea, his claims regarding this counsel’s failure to sequester witnesses, to object to hearsay, and to review Argol’s previously recorded statements were waived by his guilty plea.
¶ 19. Argol alleges that he told his trial counsel that he was under the influence of prescription medication during the suppression hearing. To support his claim, Argol references his and wife affidavits. First, Argol’s wife’s affidavit does not address the suppression hearing. She states only that Argol normally took six to seven Lortab pills daily and that he had told her that he had taken ten to twelve on the day of his arrest. Argol’s wife concludes that Argol was under the influence of drugs when he gave and signed his confession. However, her conclusion is based purely on a statement that Argol made to her after confessing to the crimes. Moreover, even though she states that Ar-gol’s counsel was aware of Argol’s dependency on prescription medication, she does not state that she has personal knowledge of this fact. Second, without his wife’s affidavit, there is no support for Argol’s allegations except his own affidavit, which is insufficient to support an ineffective-assistance-of-counsel claim. See Thompson v. State, 78 So.3d 939, 941 (¶ 5) (Miss.Ct.App.2012). Accordingly, this issue is without merit.

b. Plea Hearing

¶ 20. Argol maintains that his trial counsel was ineffective during his plea hearing because counsel indicated that he would receive a lighter sentence if he entered an Alford plea. Again, Argol relies on his wife’s .affidavit to support his claim. She states in her affidavit that Argol’s trial counsel told them that the circuit court would show him leniency for entering an Alford plea. However, Argol’s statements during the plea colloquy contradict this allegation. The following exchange occurred between Argol and the court during the plea hearing:
[BY THE COURT]: All right. Mr. Ar-gol, do you understand all of that?
[DEFENDANT]: Yes, Your Honor.
[BY THE COURT]: That constitutes at least some agreement that’s been reached between the State of Mississippi and your lawyer and you as to [the] recommendation to be made to this [e]ourt.
[DEFENDANT]: Yes, sir.
[BY THE COURT]: Which, if my calculations are correct, would reduce your exposure from 85 years to 40 years. Do you understand that?
[DEFENDANT]: Yes, Your Honor.
*855 [BY THE COURT]: All right. But now, Mr. Argol, do you understand I’m not bound by that recommendation; that I can accept your pleas of guilty in these charges and sentence you to 85 years in prison?
[DEFENDANT]: Yes, Your Honor.
[BY THE COURT]: Has anybody promised you [that] you would not receive 85 years in prison?
[DEFENDANT]: No, Your Honor.
[BY THE COURT]: Has anybody promised you that I would limit myself to a 40 year maximum or that I would give you any leniency whatsoever?
[DEFENDANT]: No, Your Honor.
¶21. It is clear that Argol knew that the circuit court would not be bound by his attorney’s or the prosecutor’s sentencing recommendations. He knew that he faced up to 85 years in prison, regardless of what his attorney had promised. “[I]t is appropriate for a [circuit] court to place great weight on statements made during guilty plea hearings, as there should be a strong presumption of validity of anyone’s statement under oath.” Peckinpaugh v. State, 949 So.2d 86, 92 (¶ 16) (Miss.Ct.App.2006) (quoting Sanchez v. State, 913 So.2d 1024, 1027 (¶ 8) (Miss.Ct.App.2005)(internal quotations omitted)). Here, when the court asked Argol if he had been promised a lighter sentence, he replied that he had not. Ar-gol has failed to prove that his trial counsel promised that he would receive a lighter sentence and, as such, has failed to show that his trial counsel was deficient. Therefore, we need not consider Strickland’s second prong. Consequently, the circuit court did not err in dismissing Argol’s PCR motion as to this issue. This issue is without merit.

III. Disproportionate Sentences

¶ 22. Argol contends that his sentences are disproportionate to his crime. Appellate courts in this state have stated that a sentence will not be disturbed on appeal if it is within the limits prescribed by statute. See Johnson v. State, 950 So.2d 178, 183 (¶ 22) (Miss.2007); Miller v. State, 106 So.3d 860, 863 (¶ 12) (Miss.Ct.App.2013). Here, Argol pleaded guilty to the sexual exploitation of a minor pursuant to Mississippi Code Annotated section 97-5-33(6) (Supp.2012), and to three counts of fondling pursuant to Mississippi Code Annotated section 97-5-23(2) (Rev.2006). The maximum sentence that Argol could have received for the sexual-exploitation charge was forty years. Additionally, Ar-gol could have received a maximum of forty-five years for the three fondling charges (fifteen-year maximum per charge). In total, Argol faced up to eighty-five years in prison. The circuit court sentenced him to the maximum sentence on all charges but required the sentences to run concurrently, effectively reducing Argol’s sentence by forty-five years. As Argol’s sentences are within the limits prescribed by the statutes, we decline to disturb them on appeal.

IV. Evidentiary Hearing

¶ 23. Argol argues that he was entitled to an evidentiary hearing on his PCR motion. As stated, a PCR movant is entitled to an evidentiary hearing only when it is apparent from the face of his motion, any annexed exhibits, or the prior proceedings in the case that he is entitled to relief. Miss.Code Ann. § 99-39-11(2). Argol “bears the burden of proof by [a] preponderance of the evidence that he is entitled to post-conviction relief.” Lambert v. State, 941 So.2d 804, 811 (¶ 34) (Miss,2006) (quoting McClendon v. State, 539 So.2d 1375, 1377 (Miss.1989) (internal *856 quotations omitted)). Argol has failed to carry his burden. We find that his Alford plea was valid, his claims regarding the voluntariness of his confession were waived when he entered his Alford plea, and he failed to make a sufficient showing that his counsel was ineffective or that his sentence was disproportionate. As such, we cannot say that the circuit court erred in failing to grant an evidentiary hearing before dismissing Argol’s PCR motion. Accordingly, this issue is without merit.
¶ 24. THE JUDGMENT OF THE DE-SOTO COUNTY CIRCUIT COURT DISMISSING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. The record reflects that Argol filed to separate notices of appeal in which he challenged the September 22, 2011 order of the circuit court — thus explaining the two separate case numbers.

. North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).